DA 08-0425

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 346

C. KENNETH BREWER, JOHN BRUDER,
PATRICIA K. DOYLE, RICHARD S. DRODZ,
KRISTINE M. LEE, FRANK RINGEL,
CHRISTOPHER RAUSCH, and ERIC ROLSHOVEN,

        Plaintiffs, Appellees and Cross-Appellants,

  v.

CHAD HAWKINSON, DACE R. HAWKINSON,
and ROBERT L. HAWKINSON,

        Defendants, Appellants and Cross-Appellees,

  v.

ONE HORSE CONSTRUCTION, INC.,

        Intervenor.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                  In and For the County of Ravalli, Cause No. DV-06-446
                  Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Douglas D. Harris, Douglas Harris Law Offices, Missoula, Montana

        For Appellees:

                Reid J. Perkins and Jane E. Cowley, Worden Thane P.C., Missoula,
                Montana

                      Submitted on Briefs:  June 10, 2009
                                  Decided:   October 21, 2009

Filed:

_____
                              Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 The several Plaintiffs in this action filed suit in the Twenty-first Judicial District Court, Ravalli County, seeking a declaratory judgment that covenants running with the land in the Homestead Acres subdivision, prohibiting further division of tracts, remain in effect. The Plaintiffs also sought a declaratory judgment that they had effectively amended these same covenants to provide that access to land outside the subdivision may not be granted across a tract inside the subdivision. The Hawkinsons cross-claimed for a declaratory judgment that the covenants had expired by their terms and thus their tract could be further divided. The Intervenor, One Horse Construction, Inc., joined the Hawkinsons, and in addition sought a declaratory judgment that it may grant a right-of-way easement across its Homestead Acres tract to access land it owns outside of and adjacent to the subdivision.

¶2 After the Hawkinsons and One Horse moved for summary judgment, the District Court denied summary judgment in part and concluded that the covenants remain in effect and the Hawkinsons could not further divide their tract. The District Court granted summary judgment in part to One Horse, declaring the amendment to the covenants was not properly adopted and thus it could grant access across its tract to its land outside of the subdivision. Thereafter, the District Court certified its order on summary judgment as final and subject to appeal under M. R. Civ. P. 54(b). This Court accepted the appeal under M. R. App. P. 6(6).

¶3 The issues on appeal are:

¶4 Issue 1: Did the District Court err in declaring that the covenants were still in

effect as they are not ambiguous but rather contain a typographical error?

¶5 Issue 2 (cross-appeal): Did the District Court err in declaring that the covenants were not properly amended and did not prohibit One Horse from granting a right-of-way across its tract?

## BACKGROUND

¶6 In July 1975, the original owners of the land now comprising Homestead Acres subdivided their property into eight twenty-acre tracts, denominated tracts 1 through 8. At that time, the original owners also executed and recorded a Declaration of Protective Restrictions, Covenants and Conditions of Homestead Acres (the Covenants) which provides, *inter alia*:

> No tract shall be subdivided into sub tracts so that any residential site contains less than ten (10) acres, nor will there be more than two residences on any twenty acres.

¶7 Article V of the Covenants provides:

> The covenants shall be binding until January 1, 1995, after which time they shall be automatically extended for successive period of ten (10) years, unless an instrument signed by all of the owners of a majority of the tracts in the subdivision has been recorded agreeing to change the covenants in whole or in part. For purposes of this Article, each platted tract in Certificate of Survey No. 894 shall be entitled to one vote, and all of the owners of such tracts must execute written consents as to the manner in which such vote shall be made and who shall cast such vote.

¶8 Seven of the eight tracts in Homestead Acres were subsequently subdivided into ten-acre subtracts. The Hawkinsons became owners of subtract 7B and One Horse acquired the adjacent subtract 7A. One Horse also owns an undeveloped parcel behind tract 7. In 2006, about thirty-one years after the Covenants were recorded, the

3

Hawkinsons further subdivided their subtract 7B into a six-acre subtract, 7B2, and a four-acre subtract, 7B1, and started to construct a second residence. The map below illustrates the ownership of Homestead Acres at the time this action commenced:



¶9 In October 2006, the Plaintiffs filed the instant action, seeking a declaratory judgment that the Covenants were still in effect, thus the creation and transfer of subtract 7B1 violated the Covenants and must be declared invalid. The Plaintiffs also prayed for a permanent injunction requiring the Hawkinsons to reverse their property transfer and prohibiting any future transfers in violation of the Covenants. The Hawkinsons counterclaimed, praying for a declaratory judgment that the Covenants had expired, thus the further subdivision and transfer of their property was valid.

¶10 After the Plaintiffs filed the action, it became apparent that One Horse wished to further subdivide subtract 7A and access its undeveloped property through subtract 7A. The Plaintiffs then organized an election to amend the Covenants to provide, "No owner of a tract of land which is subject to [the Covenants] may grant a road easement through

4

that owner's tract for access to land which is not subject to [the Covenants]." Article VI of the Covenants states they may be amended if:

> an instrument signed by all of the owners of two-thirds of the Tracts in Certificate of Survey No. 894, agreeing to such amendment. Again, each tract shall be entitled to one vote, and all of the owners of each tract must execute and join in the manner in which the vote is cast.

The map depicted in ¶ 8 above reflects the property ownership of Homestead Acres at the time of the election. Of the fifteen property owners, eleven voted to pass the amendment.

¶11 After the election, One Horse intervened in this action and joined the Hawkinsons in alleging that the Covenants expired and, therefore, it was not prohibited from further subdividing its subtract 7A. It further alleged that, if the court held that the Covenants remained in effect, the amendment to the Covenants was invalid because it did not pass by a two-thirds vote of the owners of the tracts in the subdivision. One Horse moved for summary judgment and the Hawkinsons joined in that motion.

¶12 In its summary judgment motion, One Horse first argued that Article V of the Covenants is clear and unambiguous and could only be interpreted to read that the Covenants expired at the end of the ten year period following January 1, 1995.

¶13 One Horse next argued, in the event the Covenants are still in effect, the procedure to amend requires six of the eight original tract owners, or two-thirds, to vote in favor of an amendment. Thus, both of the two subtract owners of an original tract must vote in the affirmative in order for the vote of a tract to be counted in favor of the amendment. One Horse argued that only five out of six of the original eight parcels voted in favor of

5

the proposed amendment, which is less than the required two-thirds, and the amendment was not adopted.

¶14 Responding to One Horse's argument on the expiration of the Covenants, the Plaintiffs asserted that Article V is ambiguous, a genuine issue of material fact exists regarding its interpretation, and summary judgment must be denied. Plaintiffs argued the use and definition of "successive" meant the term automatically renewed every ten years and the Covenants are still effective, thus the Hawkinsons' subdivision and transfer was void.

¶15 Responding to One Horse's interpretation of the amendment procedure in the Covenants, the Plaintiffs asserted the Covenants contemplated subdivision of the original tracts into two subtracts, therefore, each owner of a subtract was entitled to one-half of a vote. As seven of the eight tracts had been divided, there were fifteen possible votes. The Plaintiffs argued that because eleven out of fifteen owners voted for the amendment, the two-thirds requirement was satisfied and the amendment was valid.

¶16 The District Court concluded that Article V of the Covenants contains a typographical error, and is not ambiguous. The court determined, based on the *Black's* and *Webster's* definition of "successive," that the word "period" should be "periods."[1]

---

[1] Successive: following one after another in a line or series. *Black's Law Dictionary* 1431 (6th ed. 1990). Successive: 1. following in order or in uninterrupted sequence; consecutive; *three successive days*; 2. following another in a regular sequence: *the second successive day*; 3. characterized by or involving succession. *Webster's New Universal Unabridged Dictionary* 1899 (Random House 1996). The court further provided, "'Succession' is commonly defined: 1. the coming of one person or thing after another in order, sequence, or in the course of events: *many troubled in succession*; 2. a number of persons or things following one another in order or sequence." *Webster's New Universal Unabridged Dictionary* 1899.

Thus, Article V, without the typographical error, should read that the Covenants "shall be automatically extended for successive periods of ten years." This means the Covenants remain in force as a matter of law.

¶17    Regarding the amendment issue, the District Court concluded that the Covenants consistently provide that the voting procedure requires a two-thirds majority of the eight tracts, and each tract has a single vote. Because both subtract owners of only five tracts signed the amendment, the District Court held the two-thirds requirement to amend the Covenants was not satisfied and the amendment was not approved.

¶18    The Hawkinsons appeal the District Court's ruling that the Covenants remain in effect. The Plaintiffs cross-appeal the District Court's ruling that the amendment did not take effect.

## STANDARD OF REVIEW

¶19    We review de novo a district court's ruling on a motion for summary judgment. *Mattson v. Montana Power Co.*, 2009 MT 286, ¶ 15, 352 Mont. 212, 215 P.3d 675. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). The moving party must establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law. The opposing party must raise a genuine issue of material fact to defeat the motion and material evidence beyond mere conclusory or speculative statements. *Cobb v. Saltiel*, 2009 MT 171, ¶ 21, 350 Mont. 501, 210 P.3d 138.

7

**DISCUSSION**

¶20 *Issue 1: Did the District Court err in ruling that the Covenants contained a typographical error and not an ambiguity, thus granting summary judgment to the Plaintiffs?*

¶21 The Hawkinsons reiterate their argument that the correct interpretation of the Covenants is they renewed for a single ten year period, then expired of their own terms. However, as an alternative, they now argue on appeal that the Covenants are ambiguous and a trial is required to determine their meaning.

¶22 General rules of contract interpretation apply to restrictive covenants. "Where a contract, and by extension a restrictive covenant, has been reduced to writing, the intention of the parties is to be ascertained, if possible, from the writing alone." *Creveling v. Ingold*, 2006 MT 57, ¶ 8, 331 Mont. 322, 132 P.3d 531. The determination of whether an ambiguity exists in a restrictive covenant, as in a contract, is a question of law for a court to determine. Section 28-3-303, MCA; *K&R Partnership v. City of Whitefish*, 2008 MT 228, ¶ 21, 344 Mont. 336, 189 P.3d 593; *Sec. Abstract & Title Co. v. Smith Livestock, Inc.*, 2006 MT 265, ¶ 17, 334 Mont. 172, 146 P.3d 732. Any person having an interest under a writing constituting a contract--like a restrictive covenant--may seek declaratory relief concerning any question of construction arising under the instrument. Section 27-8-202, MCA.

¶23 Whether an ambiguity exists in a contract is to be made on an objective basis. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Cooperatives, Inc.*, 2007 MT 159, ¶ 20, 338 Mont. 41, 164 P.3d 851. A mere disagreement over the meaning of a

8

provision does not render the provision ambiguous. *Czajkowski v. Meyers*, 2007 MT 292, ¶ 21, 339 Mont. 503, 172 P.3d 94.

¶24 The District Court concluded as a matter of law that the Covenants are not ambiguous, but merely contain a typographical error. Thus, by reference to the plain language of Article V of the Covenants, which uses the word "successive," the Covenants automatically extend for successive ten year periods unless an instrument signed by all of the owners of a majority of the tracts in the subdivision is recorded agreeing to change this provision. We agree with the District Court.

¶25 The Covenants state they "automatically extend" for "successive period." They also provide that they can, at any time, be amended out of existence by use of the procedure provided. If the Covenants' "automatic" extension was meant to be only a single ten year "period," there would be no reason to provide for an initial twenty year period and then an automatic ten year extension. The Covenants would simply expire in thirty years, unless the property owners signed and recorded an instrument extending them.

¶26 Further, if the use of the singular "period" rather than the plural "periods" is not a mistake, the word "a" would necessarily have to be added and the word "successive" would have to be deleted. The word "successive" is properly interpreted to mean following one after the other in a line or series. *See*, FN1. If the use of the singular "period" is not a mistake, the addition of the descriptive adjective "successive" is trite in the context of Article V of the Covenants.

9

¶27 The whole of the Covenants is to be considered in order to give effect to their intention. Section 28-3-202, MCA. We conclude, considering the Covenants as a whole, it is clear they are intended to remain in effect until they are affirmatively rejected by the property owners of Homestead Acres. They are not ambiguous. The District Court correctly held that the Covenants automatically renewed for "successive periods" of ten years and are still in effect.

¶28 *Issue 2: Did the District Court err in its interpretation of the Covenants and granting summary judgment because two-thirds of the required tract owners did not approve the amendment?*

¶29 The Plaintiffs cross-appeal, reiterating their argument that the Covenants contemplate that each tract could be divided into two ten-acre subtracts, and thus each subtract should be given half of a vote on a proposed amendment. Based on this voting method, the two-thirds requirement is satisfied and the amendment prohibiting One Horse from granting a right-of-way through tract 7A is effective.

¶30 The Covenants provide, "'Tract' shall mean and refer to any one of the eight tracts described in the Certificate of Survey No. 894. In the event any one of the eight lots is further subdivided, or partitioned, as hereinafter authorized and limited, such smaller tract shall be known as a 'sub tract.'" An "'[o]wner' shall mean and refer to the equitable owner, whether one or more persons or entities, of any tract which is a part of the property described in Certificate of Survey No. 894 . . . ." As discussed above, Article VI of the Covenants states, "Again, each tract shall be entitled to one vote, and all of the owners of each tract must execute and join in the manner in which the vote is cast." A

10

proposed amendment must be "signed by all of the owners of two-thirds (2/3) of the tracts in Certificate of Survey No. 894, agreeing to such amendment."

¶31 Based on the clear language of the Covenants, a "tract" is one of the original eight tracts. Each tract has one vote, thus the maximum number of votes is eight. For a tract to cast an affirmative vote to amend the Covenants, each owner of property in that subtract must agree to the amendment. The District Court correctly determined that only five of the eight tracts voted in the affirmative to amend the Covenants and thus they were not effectively amended.

## CONCLUSION

¶32 The District Court's Opinion and Order of April 10, 2008, granting and denying summary judgment is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

11