# FILED

May 11 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 09-0572

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 107

TOBY HANSEN and KELI HANSEN,

      Plaintiffs and Appellants,

  v.

GRANITE COUNTY, and JOHN DOES 1-10,

      Defendants, Appellees and Cross-Appellants.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Granite, Cause No. DV-2007-002
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Cory R. Gangle, Milodragovich, Dale, Steinbrenner & Nygren, P.C., Missoula, Montana

      For Appellees:

          Susan B. Swimley, Attorney at Law, Bozeman, Montana

          Submitted on Briefs:  March 24, 2010

          Decided:  May 11, 2010

Filed:

          _____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1　The Granite County Commissioners (the Commissioners) denied an application for preliminary plat approval of a proposed subdivision filed by Toby and Keli Hansen (the Hansens). The Hansens appealed the decision to the District Court for the Third Judicial District, Granite County. The District Court affirmed the Commissioners' decision and awarded Granite County damages in the amount of $30,197. The Hansens appealed and Granite County cross-appealed. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

¶2　The Hansens raise the following issues on appeal:

¶3　1. Whether the District Court erred in concluding that the Commissioners' denial of the proposed subdivision application was not arbitrary, capricious, or unlawful.

¶4　2. Whether the District Court abused its discretion in awarding damages to Granite County.

¶5　Granite County raises the following issue by way of cross-appeal:

¶6　3. Whether the District Court's denial of every cost in Granite County's Memorandum of Costs, except $10 for a witness fee, was an abuse of discretion.

### Factual and Procedural Background

¶7　The Hansens own property in Granite County between Drummond and Missoula that is bordered by a frontage road known as the Beavertail Road. This road is a narrow, two-lane highway that runs parallel to Interstate 90. To the west of the Hansens' property is a parcel of land referred to as the Weston Ranch. Because Beavertail Road cuts

2

through portions of the ranch's agricultural operations, ranch representatives must move cattle and equipment across the road from time to time.

¶8     In January 2006, the Hansens submitted a preliminary subdivision proposal to Granite County encompassing the Hansens' property. The Hansens referred to the subdivision as the Ryan Creek Major Subdivision. This proposed subdivision would create 202 residential lots. It would have its own fire and police protection, mail service, ambulance service and service mall, and it would include land dedicated for parks and schools as well as 40 commercial lots.

¶9     On February 2, 2006, the Hansens attended a mandatory pre-application conference with the Commissioners. The purpose of this conference was to discuss the application process and to identify potential problems with the proposed subdivision. The Commissioners did not identify any problems with the subdivision at this conference.

¶10     The Hansens submitted a formal subdivision application to Granite County on March 18, 2006. Along with the application, the Hansens paid Granite County $12,850 as a non-refundable fee to offset the cost for reviewing their application. In April 2006, the Hansens held two informal community meetings in which members of the public were invited to come and learn about the subdivision and to discuss the proposal with the Hansens. One meeting was held in Drummond, Montana, and the other meeting was held in Phillipsburg, Montana. According to the Hansens, no one at these community meetings expressed any concerns as to how the proposed subdivision might affect local services or local agricultural operations.

¶11 The proposed subdivision was the largest subdivision Granite County had ever seen. Since the Commissioners did not have the expertise to review the Hansens' subdivision application, they hired outside consultants. Susan Swimley was retained to act as attorney for the specific purpose of assisting the Commissioners in reviewing and processing the subdivision application. In addition, Matt Smith was hired as an engineering expert and Jamie Morris was hired as a land-use planning consultant.

¶12 After reviewing the subdivision application, Morris wrote a letter to the Hansens dated June 7, 2006, stating that their subdivision application was "insufficient." She requested that the Hansens provide additional information by June 28, 2006. The Hansens gathered the requested information and sent it to Morris for review. The Commissioners deemed the Hansens' application complete on July 7, 2006, and a public hearing before the Granite County Planning Board (the Board) was scheduled for August 31, 2006.

¶13 In preparation for the hearing, Granite County's planning staff was required to prepare a report for the Hansens, the Board, and the public. In this report, the planning staff demanded additional information from the Hansens and indicated that if the Hansens did not submit the additional information as requested, they would recommend that their subdivision application be denied. The Hansens did not receive a copy of this report until a few days before the scheduled hearing. Consequently, they agreed to postpone the hearing until they could submit the additional information. According to the Hansens, none of the additional information requested concerned impacts to agriculture, traffic or educational services.

¶14 On November 29, 2006, the Board held a public hearing on the proposed subdivision. A representative of the Weston Ranch made a lengthy presentation in which he raised concerns about increased traffic from the proposed subdivision impeding the ranch's ability to move cattle and equipment across the Beavertail Road. The Weston Ranch representative provided the Board and the Hansens with a thick packet of information detailing their concerns. The Hansens now complain that they did not have an opportunity to review the information and to respond because once the public hearing was deemed closed, the Board made it clear that no additional information could be presented.

¶15 The Board issued its findings and recommendations wherein it pointed out the significant adverse impacts to the Weston Ranch agricultural operations because of the high volume of traffic from the proposed subdivision that would have to travel the portion of the Beavertail Road that passed through the ranch. The Board also determined that this high volume of traffic on the Beavertail Road would create a significant adverse impact to the public health and safety and that the subdivision application did not identify any specific improvements that would be made to the Beavertail Road to mitigate those adverse impacts.

¶16 The Commissioners conducted a public meeting on December 12, 2006, at which time the Board recommended denial of the subdivision application because of its alleged impacts to the road system and to the Weston Ranch. The Hansens claim that when they attempted to address these issues, they were told they could not speak unless spoken to.

¶17    In January 2007, the Commissioners determined that the subdivision would cause significant adverse impacts to the public health and safety and to existing agricultural operations due to the increase in the amount of traffic on the Beavertail Road. They also determined that the subdivision would cause serious adverse impacts to the local school district. Consequently, the Commissioners unanimously decided to deny the Hansens' application for preliminary plat approval for the Ryan Creek Major Subdivision. The Commissioners did not issue their written findings denying the subdivision application until May 15, 2007. The Hansens timely appealed that decision pursuant to § 76-3-625, MCA.

¶18    A four-day bench trial before the Third Judicial District Court was held in October 2008. Nine months later, the court issued its Findings of Fact, Conclusions of Law and Order wherein it affirmed the decision of the Commissioners. In addition, the District Court determined that the Hansens were not entitled to damages resulting from the decision to deny their subdivision application because they failed to offer credible proof or documentation supporting their $350,000 damage claim or their claim for application fees of $15,166.77. The court did award Granite County damages in the amount of $30,197 for unpaid application fees. It also awarded Granite County costs in the amount of $10 for witness fees. The Hansens appeal and Granite County cross appeals.

**Issue 1.**

¶19    *Whether the District Court erred in concluding that the Commissioners' denial of the proposed subdivision application was not arbitrary, capricious, or unlawful.*

6

¶20 "A preliminary plat of a proposed subdivision is subject to the review of the governing body to determine whether the plat conforms to the master growth plan adopted for the area and the plat's effects on the public health, safety, and welfare." *Madison River R.V. LTD. v. Town of Ennis*, 2000 MT 15, ¶ 39, 298 Mont. 91, 994 P.2d 1098 (citing §§ 76-3-604 and -605, MCA).

> A person who has filed with the governing body an application for a subdivision under this chapter may bring an action in district court to sue the governing body to recover actual damages caused by a final action, decision, or order of the governing body or a regulation adopted pursuant to this chapter that is *arbitrary or capricious*.

Section 76-3-625(1), MCA (emphasis added).

¶21 This Court reviews a district court's ruling made pursuant to § 76-3-625, MCA, the same way we review decisions from administrative agencies: " '[T]he standard of review to be applied by the trial court and this Court is whether the record establishes that the agency [i.e., governing body] acted arbitrarily, capriciously, or unlawfully.' " *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 69, 312 Mont. 52, 57 P.3d 836 (quoting *Madison River*, ¶ 30). Moreover,

> [w]hen a district court or this Court reviews an action under the "arbitrary and capricious" standard, a reversal of the appealed ruling is not permitted "merely because the record contains inconsistent evidence or evidence which might support a different result. Rather, the decision being challenged must appear to be *random, unreasonable, or seemingly unmotivated*, based on the existing record."

*Kiely*, ¶ 69 (quoting *Silva v. City of Columbia Falls*, 258 Mont. 329, 335, 852 P.2d 671, 675 (1993) (emphasis added)).

¶22    In this case, the Commissioners denied the Hansens' application for preliminary plat approval on the basis that there were significant and immitigable adverse impacts to agriculture, local schools, public health and safety, and traffic.  The District Court, after hearing the testimony and reviewing the evidence presented at the trial in this matter, concluded that the Commissioners' decision to deny the Hansens' subdivision application was not random, unreasonable, or seemingly unmotivated.  Thus, the court affirmed the Commissioners' decision to deny the Hansens' application for preliminary plat approval of their proposed subdivision.

¶23    On appeal, the Hansens contend that the denial of their application was arbitrary, capricious and unlawful under § 76-3-625(1), MCA, because there was no evidence of immitigable and significant adverse impacts to justify denial of preliminary plat approval for their subdivision and because the Commissioners did not negotiate with them as required by law.  Moreover, the Hansens maintain that the Commissioners did not support their findings of significant adverse impacts with relevant and significant evidence.

¶24    Granite County argues on the other hand that the Hansens failed to carry their burden of demonstrating that the Commissioners' denial of the subdivision application was arbitrary and capricious.  Granite County further argues that pursuant to our decision in *Kiely,* the Hansens failed to demonstrate that, based upon the existing record, the Commissioners' decision was random, unreasonable, or seemingly unmotivated.

¶25    As indicated above, the Commissioners determined that the proposed subdivision would create significant and immitigable adverse impacts to traffic, to agriculture, to

8

local schools, and to public health and safety. We hold that, based upon the existing record, portions of which we have set forth below, the Commissioners' decision was not arbitrary and capricious.

*Impacts to traffic*

¶26 According to the preliminary plat for the Ryan Creek Major Subdivision, the Beavertail Road would be the main access between the proposed subdivision and Interstate 90. Beavertail road is a narrow, two-lane highway with a speed limit of 70 miles per hour. In addition, there is no shoulder along the existing road for emergency pull outs. The Hansens indicated in their application for their proposed subdivision that the subdivision would generate between 1600 and 2400 vehicle trips per day along the Beavertail Road.

¶27 Although the Granite County subdivision regulations do not require a developer to provide a traffic impact study for the area surrounding a proposed subdivision, Toby Hansen admitted at the trial in this matter that a traffic impact study would have helped the Commissioners address concerns over impacts to the Beavertail Road. And, Tammy McGill, the Hansens land-use planning consultant, testified that they knew that the condition of the Beavertail Road was a problem. In fact, evidence adduced at trial indicated that representatives of Granite County asked the Hansens several times during the application review process if they would provide a traffic impact study for the Beavertail Road or whether they intended to propose other plans for mitigation. Jamie Morris, the land-use planning consultant hired by Granite County, testified that she told the Hansens that a traffic impact study could benefit their application. And, county

9

planner Linda Bouck testified that a traffic impact study was raised as an issue at least six times at the various meetings and hearings about the Hansens' application.

¶28     In addition, both Morris and Bouck pointed out that it is common practice for a developer to ask for an extension to temporarily halt the review process to allow them time to bring in whatever information was required so that the developer and the Commissioners could come to some kind of mitigation. The Hansens, however, did not do this. Instead, the Hansens chose not to submit any additional information or mitigations to Granite County regarding traffic on the Beavertail Road. Notably, McGill stated at the public hearing that the application would "stand on its face." And, Toby Hansen testified that when Granite County's planning staff asked the Hansens to provide documentation stating that Beavertail Road was capable of supporting the estimated traffic that would be generated by the proposed subdivision, the Hansens, instead of providing the requested information, stated that that would have to be worked out with the Montana Department of Transportation.

¶29     Ultimately, the Commissioners determined that there would be significant adverse impacts to Beavertail Road due to the added traffic on that road from the proposed subdivision. The Commissioners also determined that since the Hansens had not proposed any improvements to the Beavertail Road, those significant adverse impacts could not be reasonably mitigated.

¶30     Granite County pointed out in its brief on appeal, and we agree, that it is the developer's duty to provide all the information to the governing body for its consideration in reviewing an application for preliminary plat approval. Bouck made the

10

same observation at trial in this case. She testified that the planning staff, the Board, and the Commissioners "all rely on the developer to submit the information in. The job of the County really is to review the application, not to draft it." Indeed, McGill admitted at trial that it is the obligation of the developer of the property "to identify the impacts and propose a subdivision that mitigates the impacts."

¶31 In this case, the Hansens bore the sole burden of offering an application that could be approved. And, in fact, Cory Lang, an engineer hired by the Hansens, testified that he completed a traffic impact study for the Hansens *after* the Commissioners denied the application for preliminary plat approval for Ryan Creek Major Subdivision.

*Impacts to agriculture*

¶32 The Commissioners determined that the Weston Ranch would be significantly and adversely impacted by the proposed subdivision because of the increased traffic on the Beavertail Road. Emery Weston testified that because the ranch facilities are on both sides of Beavertail Road, they must move livestock across the road to utilize their pasture and corrals. In addition, they move farm equipment across the road to transport hay for storage and to feed their livestock. Often times this occurs during the dusk and dawn hours when visibility is generally limited.

¶33 McGill testified that she and the Hansens were aware early on that the Westons were raising an issue about the traffic impacts on their ranch from the proposed subdivision and that it would hinder their ability to cross Beavertail Road. Nevertheless, while the Hansens included a provision in the covenants for the proposed subdivision

11

acknowledging the Weston Ranch's continued right to farm, they offered no reasonable mitigation to prevent the increased traffic from hindering the Weston Ranch's operations.

*Impacts to local schools*

¶34 The plans for the proposed subdivision included the dedication of 1.12 acres for a future school site, but construction of a school would depend on student population. The Commissioners determined that although children in the proposed subdivision would initially attend school in Drummond, the overall population of the proposed subdivision would eventually be too large for the Drummond schools to accommodate. Thus, the Drummond schools would have to expand to support the additional population and additional staff would have to be added. If a school was later constructed within the proposed subdivision, the Drummond school district would then experience a serious loss of school funding and staffing.

¶35 To mitigate this impact, the Hansens proposed to set aside $100 from the sale of each lot to be held in escrow for the school district to use to subsidize temporary school facilities. The Commissioners determined that this amount was inadequate to reasonably mitigate the adverse impact to the local schools from the influx of students it was not even sufficient to hire one teacher.

¶36 The Commissioners also determined that the 1.12 acres the Hansens proposed to set aside for a future school site in the proposed subdivision was not large enough to support both an elementary school and a high school. Thus, the Hansens proposed that park land could be used by the school for school purposes. However, as the

Commissioners pointed out, any expansion of the school into park land would have to be reviewed and approved by Granite County.

¶37   Hence, the Commissioners determined that because of the inadequate land dedication for new schools within the proposed subdivision and because of inadequate funding for the existing schools to handle the influx of students from the proposed subdivision, the adverse impacts to educational services was significant.   The Commissioners also determined that the Hansens had not offered reasonable mitigation for those adverse impacts.

*Impacts to public health and safety*

¶38   As already noted, Beavertail Road is a narrow, two-lane road with a speed limit of 70 miles per hour and no shoulder along the existing road surface for emergency pull outs.   The Beavertail Road was to be the main access from the subdivision to Interstate 90.   Although testimony at trial differed on this point, several individuals testified that there is a "blind corner" at one point on Beavertail Road because a rock outcropping next to the road limits the sight distance in that section.   Morris testified that there were also concerns about bighorn sheep being in the road near the rock outcropping.   And, Board President Dick Hoehne testified that he had concerns about joggers, bicyclists and people walking on the Beavertail Road because of the increased traffic on that road.

¶39   Consequently, the Commissioners determined that the high amount of traffic that would be generated from the proposed subdivision would create a significant adverse impact to the public health and safety.   Although McGill testified that she and the

Hansens had notice that there were concerns about the adverse impacts the proposed subdivision would put on the road, the Hansens did not offer any reasonable mitigation for these adverse impacts.

¶40     While the record may contain conflicting evidence, as long as a substantial amount of the evidence supports the governing body's decision and the governing body explains why it weighed certain evidence as more credible than other evidence, the governing body's decision should be upheld. *See Richards v. County of Missoula*, 2009 MT 453, ¶ 22, 354 Mont. 334, 223 P.3d 878 (citing *Englin v. Board of County Com'rs.*, 2002 MT 115, ¶¶ 20, 27, 310 Mont. 1, 48 P.3d 39).

¶41     Accordingly, based on all of the foregoing, we hold that the Commissioners' decision to deny the Hansens' application for the proposed subdivision was not arbitrary, capricious, or unlawful. We further hold that the District Court did not err in affirming that decision.

**Issue 2.**

¶42     *Whether the District Court abused its discretion in awarding damages to Granite County.*

¶43     The District Court awarded Granite County $30,197 in damages that Granite County claimed the Hansens still owed for their application for preliminary plat approval for Ryan Creek Major Subdivision. We review an award of damages to determine whether the trial court abused its discretion. *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 102, 312 Mont. 52, 57 P.3d 836 (citing *Sletteland v. Roberts*, 2000 MT 382, ¶ 36, 304 Mont. 21, 16 P.3d 1062; *Edington v. Creek Oil Co.*, 213 Mont. 112, 127,

14

690 P.2d 970, 978 (1984)). "A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice." *Tin Cup County Water v. Garden City Plumb.,* 2008 MT 434, ¶ 46, 347 Mont. 468, 200 P.3d 60 (citing *McCormack v. Andres*, 2008 MT 182, ¶ 22, 343 Mont. 424, 185 P.3d 973). We have also stated that

> [i]n all cases, damages must be reasonable. Section 27-1-302, MCA. An award must be reduced when it substantially exceeds that which the evidence can sustain. Only when the amount awarded is so grossly out of proportion to the injury as to shock the conscience will an appellate court intervene.

*Kiely*, ¶ 102 (internal citations and quotation marks omitted).

¶44 The Hansens argue on appeal that Granite County's claim for damages in this case is barred by M. R. Civ. P. 13(a) because Granite County failed to file a compulsory counterclaim and because Granite County's claim for damages is not reasonable and is not supported by clear and convincing evidence.

¶45 Granite County argues that the issue of a compulsory counterclaim is not properly before this Court because the Hansens only raised that issue in a reply brief before the District Court wherein they failed to cite any authority in support of their argument. In addition, Granite County asserts that it raised the issue of damages in the Pretrial Order and that its request for damages was adequately supported. Granite County further asserts that the Hansens have offered no evidence that the amount of damages claimed were excessive or unwarranted.

¶46 Compulsory counterclaims are governed by M. R. Civ. P. 13(a) which provides in pertinent part:

15

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

The purpose of compulsory counterclaims is to " 'avoid a multiplicity of suits by requiring the parties to adjust, in one action, their various differences growing out of any given transaction.' " *Farmers Co-op. Ass'n v. Amsden, LLC*, 2007 MT 287, ¶ 13, 339 Mont. 452, 171 P.3d 684 (quoting *Zimmerman v. Connor*, 1998 MT 131, ¶ 9, 289 Mont. 148, 958 P.2d 1195). We stated in *Farmers* that if a counterclaim is compulsory, it must be pleaded or it will be barred. *Farmers*, ¶ 13 (citing *Zimmerman*, ¶ 12).

¶47 In the case *sub judice*, the Hansens initially argued in the court below that the amount of damages claimed by Granite County was excessive and they sought to exclude any mention of Granite County's damages at trial claiming the amount of Granite County's alleged damages were the subject of another matter. Directly contrary to the Hansens' current assertion that Granite County's damages should have been pled in a compulsory counterclaim, the Hansens argued that the issue of Granite County's damages was not relevant to the action at hand. However, in their Reply Brief in support of their Motion in Limine, the Hansens asserted that Granite County failed to file a counterclaim for damages pursuant to M. R. Civ. P. 13(a) in response to the Hansens' Complaint, thus Granite County's claim for damages should be barred. In making this argument, the Hansens failed to cite any authority in support. The District Court denied the Hansens' motion.

¶48 In the Pretrial Order, Granite County contended that the Hansens "still owe $12,850.00 or an amount to be determined at trial to Granite County for the application for Ryan Creek Major Subdivision . . . ." The Hansens' contentions, on the other hand, said nothing about Granite County's claim for damages being barred as a compulsory counterclaim under M. R. Civ. P. 13(a).

¶49 M. R. Civ. P. 16(e) provides that the pretrial order controls "the subsequent course of the action unless modified by a subsequent order."

> The purpose of pretrial orders is to simplify issues, prevent surprise and allow counsel to prepare their cases for trial based on the pretrial order. A legal theory or factual issue for trial must be at least implicitly included in the pretrial order; however, pretrial orders should be liberally construed to permit any issues at trial that are embraced within [their] language.

*Weimer v. Lyons*, 2007 MT 182, ¶ 20, 338 Mont. 242, 164 P.3d 922 (internal citations and quotation marks omitted).

¶50 Because the Hansens did not raise the issue of compulsory counterclaims as one of their contentions in the Pretrial Order, they effectively waived that argument. Moreover, as noted earlier in this Opinion, the purpose of compulsory counterclaims is to " 'avoid a multiplicity of suits by requiring the parties to adjust, in one action, their various differences growing out of any given transaction.' " *Farmers*, ¶ 13. By pursuing their damage claim in this action, Granite County has complied with that purpose.

¶51 The Hansens also argue on appeal that Granite County's claim for damages is not reasonable and is not supported by clear and convincing evidence. We disagree.

¶52 The Hansens' application for the Rock Creek Major Subdivision sought to create the largest subdivision that Granite County had ever seen. In Phase One alone the

subdivision would be larger than the town of Drummond. In fact, the subdivision was planned to be a town of its own with residential as well as commercial lots, its own fire protection, police and ambulance services, mail service, and school district.

¶53 Evidence submitted at trial indicated that because Granite County had only contract planning staff at the time the subdivision application was submitted and because that staff lacked the experience and expertise to review a project of this size, Granite County incurred additional costs related to reviewing the application. These additional costs totaled $30,197 and included $11,223 for a land planning consultant, $11,239 for an engineering expert, and $7,735 for an attorney to assist in reviewing and processing the subdivision application. The Hansens offered no evidence that these additional costs were incorrect, excessive or unwarranted, or that they had already paid these costs when they submitted their application.

¶54 Accordingly, we hold that the District Court did not abuse its discretion in awarding damages to Granite County.

**Issue 3.**

¶55 *Whether the District Court's denial of every cost in Granite County's Memorandum of Costs, except $10 for a witness fee, was an abuse of discretion.*

¶56 After the District Court issued its August 5, 2009 Findings of Fact, Conclusions of Law and Order, Granite County filed its Memorandum of Costs in accordance with § 25-10-501, MCA, seeking reimbursement of more than $10,000 in costs from the Hansens. Granite County filed an Amended Memorandum of Costs on August 31, 2009, reducing the amount of costs to $3,037.71. That same day, the District Court issued an

18

order rejecting all but $10 of Granite County's claimed costs. In its order, the court did not provide any findings or conclusions indicating how it came to that amount, stating only:

> For the reasons stated in the Plaintiff's Objection to Defendant's Memorandum of Costs, IT IS HEREBY ORDERED that costs in the amount of Ten Dollars ($10.00) are awarded and taxed for the statutory fee for witness Thomas Stevens. All other costs are Denied.

¶57 "Adequate findings and conclusions are essential for without them this Court is forced to speculate as to the reasons for the District Court's decision. Such a situation is not a healthy basis for review." *Jacobsen v. Thomas*, 2006 MT 212, ¶ 19, 333 Mont. 323, 142 P.3d 859 (quoting *Jones v. Jones*, 190 Mont. 221, 224, 620 P.2d 850, 852 (1980)).

¶58 Because the District Court did not provide us with a reasoned analysis on how it arrived at its award of costs, we reverse the award of costs and remand to the District Court for further proceedings to determine Granite County's costs and for entry of findings of fact and conclusions of law on this issue.

¶59 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS