

DA 11-0335

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 19

MARK D. WAGNER,

      Plaintiff and Appellant,

  v.

BRIAN WOODWARD,

      Defendant, Third Party Plaintiff,
      Appellee, and Cross-Appellant,

  v.

TAUNJA L. WAGNER,

      Third Party Defendant and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV 09-1239(C)
                    Honorable Stewart E. Stadler, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

            John M. Wagner, Wagner Law Firm, P.C., Whitefish, Montana

      For Appellee:

            Michael A. Ferrington, Attorney at Law, Whitefish, Montana


                          Submitted on Briefs:  December 21, 2011

                                     Decided:  January 31, 2012


Filed:

                    _____
                              Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Mark and Taunja Wagner (Wagners) own property (Lot 2) along Whitefish River in Whitefish, Montana, which is subject to restrictive covenants. Brian Woodward purchased adjacent property (Lot 1) that is subject to the same covenants. Woodward added onto the deck of the home he purchased and built a split-rail fence along his east and west property lines. Wagners sued, claiming Woodward's additions violated the restrictive covenants. The Eleventh Judicial District Court determined that the fences did not violate the covenants but the deck addition did. The court ordered Woodward to remove the deck addition. Wagners appeal the District Court's fence ruling and Woodward cross-appeals the deck ruling. We affirm in part and reverse in part.

## ISSUES

¶2 A restatement of the dispositive issue on appeal and cross-appeal is whether the District Court erred in its interpretation and application of the restrictive covenants.

¶3 Additionally, both parties appeal the District Court's denial of attorney fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In 1994, Taunja's parents, Lyle and Judy Phillips, owned property designated as Lot 1 and Lot 2 of Lyle's Addition along the Whitefish River in Whitefish, Montana. On August 29, 1994, with the assistance of their lawyer, the Phillips executed restrictive covenants that ran with these adjacent parcels. These covenants were recorded on September 1, 1994, and contained four restrictions:

2

(1)　　　The southern most part of any structure or improvement built on Lot 1 must be built or placed within 90 feet south of the north boundary of Lot 1.

(2)　　　Lot 1 is for single-family residential purposes.

(3)　　　The existing trees and shrubs shall be left along the north boundary of that part of Lot 1 which is the driveway leading from Park Avenue into the main part of Lot 1.

(4)　　　No fences or trees and shrubs shall be constructed or planted on either lot so as to interfere with the view to the river by one lot across the other lot as said view now exists, unless such is approved in writing by the owners of both lots.

¶5　　It is unclear how long the Phillips owned these parcels but at some time between August 1994 and December 2003, the Wagners took ownership of Lot 2. Additionally, the record reveals that in 2000, a single-family residential home was built on Lot 1. The owner of Lot 1 at that time asked Wagner to allow him to build further south on his lot— in other words, outside of the 90-foot building envelope required by covenant #1 set forth above. Wagner denied permission and the owner assured Wagner that he would construct his home within the 90-foot building allowance. Between 2000 and January 2009 when Woodward purchased Lot 1, ownership of Lot 1 had changed several times.

¶6　　In December 2003, Wagners subdivided Lot 2 of Lyle's Addition into two lots designating the parcels Lot 1 and Lot 2 of River Bend. Currently, Wagners retain ownership of both Lots 1 and 2 of River Bend. The Wagner and Woodward homes generally face northward and each sits atop a small rise allowing views of Whitefish River from the south side of their homes. The southern part of both lots creates large, open backyards that terminate at the river. Wagners' home is to the east of Woodward's and the homes are separated by a mature stand of spruce trees.

¶7      In June 2009, Woodward remodeled the existing deck on the south side of his new home and extended it by two feet, taking the deck addition out to the same extension as the eaves of the house.  In July 2009, Woodward constructed a 30-inch tall, two-rail, split cedar fence along the west boundary of his property.  The following month, he constructed an identical fence along the east boundary of his property—the boundary line shared with the Wagners.  There is nothing in the record indicating that Wagners objected to these construction projects while they were underway.

¶8      In October 2009, Mark Wagner, individually, filed a complaint against Woodward seeking declaratory judgment and a future injunction.  Wagner asked the court to declare that the above-listed covenants applied to Woodward's property and that Woodward had violated covenants #1 and #4.  Wagner claimed that the fences interfered with his view of the river in violation of covenant #4 and that Woodward's deck addition extended outside the 90-foot building allowance in violation of covenant #1[1] as well.  He based this claim upon his belief that the foundation footprint of Woodward's house was within 90 feet of the northern property boundary and the deck extended out beyond the house's foundation footprint.  Wagner asked that the fences and the deck addition be removed and that Woodward be enjoined from additional and future violations of the covenants.  Wagner sought attorney fees and costs as well.

¶9      Woodward answered the Complaint and filed a counterclaim and a third-party complaint against Taunja, bringing her into the lawsuit.  Woodward counterclaimed, arguing that his fences did not obstruct the Wagners' view of the river, and therefore

---

[1] Wagners later claimed the fences also violated covenant #1.

4

written authorization or Wagners' approval under the covenants was not required. He further counterclaimed that the covenants restricting Lot 1 were more onerous than those restricting Wagners' Lot 2 and were therefore unfair and unenforceable. He also claimed that Wagners' subdivision of Lot 2 "violate[d] the purpose and intent of the restrictive covenants." He requested dismissal of the action and his attorney fees and costs.

¶10 Both parties filed motions for summary judgment and Woodward also filed a cross-motion for partial summary judgment. Woodward argued the material facts were not in dispute, and therefore the court need only decide the legal issues pertaining to whether the covenants were violated. He asserted that the extended deck did not extend beyond the eaves of house, and that if the eaves of his house violated the covenants, such a violation occurred 10 years before he purchased the property. He argued that Wagners were estopped under the equitable theory of laches from claiming that either the eaves of his house or the deck addition violated the covenants. Woodward also submitted that because there were no river views on the west side of his west fence, the west fence could not be in violation of the covenants. He further asserted that his east fence did not obstruct Wagners' views of the river.

¶11 Wagners countered that Woodward knew of the restrictive covenants when he purchased his property and that the photographic evidence presented to the court illustrated that Woodward had violated those covenants. Wagners demanded that both fences be removed. Wagners also submitted that if the eaves of Woodward's house extended beyond the 90-foot restriction they "must be removed" as must the matching

deck extension. They claimed Woodward's laches defense was inapplicable for lack of notice.

¶12    Wagners hired a surveyor in June 2010 who swore by affidavit that the eaves of Woodward's house extended beyond and outside of the 90-foot building allowance established by the covenants. As a result, Woodward's deck extension was outside the allowance as well.

¶13    After conducting an oral argument, the court issued its Order and Rationale on Pending Motions on October 28, 2010. The District Court dismissed Woodward's counterclaim and ruled Woodward's deck addition violated the covenants, and ordered it removed. The District Court granted Woodward's motion for summary judgment as to his fences, allowing them to remain. The court further ruled that the equitable concept of laches prohibited Wagners from seeking enforcement of the restrictive covenants as they pertained to the eaves of Woodward's home. Lastly, the court determined there was no basis for an award of attorney fees to either party.

¶14    The District Court issued it Final Judgment on May 17, 2011, wherein it ordered Woodward to reduce his deck to within 90 feet of the north property line within 180 days of the Final Judgment. Woodward claims in his brief on appeal that the District Court granted a post-notice-of-appeal stay on the removal of his deck addition until this Court issues its ruling.

¶15    Wagners appeal and Woodward cross-appeals.

**STANDARD OF REVIEW**

6

¶16 This Court reviews a district court's decision on summary judgment using the same standards as the district court under M. R. Civ. P. 56. Where there are cross-motions for summary judgment and the district court is not called upon to resolve factual issues, but only to draw conclusions of law, we review to determine whether those conclusions are correct. Accordingly, a moving party is entitled to summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Western Tradition P'ship v. AG,* 2011 MT 328, ¶ 3, 363 Mont. 220, ___ P.3d ___.

¶17 A district court's interpretation of a restrictive covenant is a conclusion of law which we review for correctness. *Czajkowski v. Meyers*, 2007 MT 292, ¶ 12, 339 Mont. 503, 172 P.3d 94.

¶18 We review for correctness a district court's decision as to whether legal authority exists to award attorney fees. We review for an abuse of discretion a district court's order granting or denying attorney fees if legal authority exists for the fees. *Hughes v. Ahlgren*, 2011 MT 189, ¶ 10, 361 Mont. 319, 258 P.3d 439. We also review a district court's denial of costs for an abuse of discretion. *Hansen v. Granite Co.*, 2010 MT 107, ¶ 55, 356 Mont. 269, 232 P.3d 409. An abuse of discretion occurs when the court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Harmon v. Fiscus Realty, Inc.*, 2011 MT 232, ¶ 7, 362 Mont. 135, 261 P.3d 1031.

## DISCUSSION

¶19 *Did the District Court err in its interpretation and application of the restrictive covenants?*

7

¶20 General rules of contract interpretation apply to restrictive covenants. *Brewer v. Hawkinson*, 2009 MT 346, ¶ 22, 353 Mont. 154, 221 P.3d 643. We generally interpret the words of a contract in their ordinary and popular sense. *Creveling v. Ingold*, 2006 MT 57, ¶ 10, 331 Mont. 322, 131 P.2d 531; § 28-3-501, MCA.

¶21 The District Court concluded that covenant #1 restricted structures and improvements from being built more than 90 feet south of the northern property boundary. The court ruled that covenant #1 did not apply to Woodward's fences because covenant #4 expressly addressed fences and the only restriction pertaining to fences was that they do not "interfere with the view to the river."

¶22 Woodward's fence could be both a structure and an improvement under the general meanings of those words contained in covenant #1. A "structure" is something built or constructed. *Random House Webster's Unabridged Dictionary* 1887 (2nd ed., Random House 2001). An "improvement" is "a change or addition by which a thing is improved." *Random House Webster's Unabridged Dictionary* at 963. These two words are very general in nature and could certainly include a fence. However, a careful reading of the covenants as a whole as required by § 28-3-202, MCA, leads us to agree with the District Court that covenant #1 does not apply to Woodward's fences because covenant #4 expressly applies. If Woodward was restricted from constructing any fence beyond the 90-foot building allowance in covenant #1 there would be no reason to separately reference fences in covenant #4. The only fences Woodward could construct if limited by covenant #1 would be a fence from the northern boundary of his lot to 90 feet south. Such a fence could not possibly interfere with views of the river; in fact, such

a fence would probably not be visible from Wagners' home at all. For any fence to potentially obscure the view of the river, it must extend beyond the 90-feet building allowance. Under these circumstances, it would be an unreasonable interpretation to apply covenant #1 to fences. We therefore affirm the District Court's conclusion that covenant #1 does not apply to Woodward's fences.

¶23 We next address whether Woodward's fences interfered with Wagners' view of the river and whether Woodward violated covenant #4 by not obtaining written permission from Wagners prior to building his fences. As noted above, Woodward's fence is a two-rail fence that is 30 inches tall and made of split cedar logs. From the photographic evidence, it is a fence very similar if not identical to Wagners' east property line fence. The fence that runs between Wagners' and Woodward's property appears to have approximately 14 or 15 fence posts. A few of the posts have birdfeeders or birdhouses mounted on the top. There is no obstructive material between the ground and the lower railing nor is there any obstructive material between the lower railing and the top railing. Other than the wooden posts and the two rails, visibility is completely unobscured.

¶24 The District Court, based upon the definition of "interfere" meaning "to put between in a way that hinders or impedes," ruled that Woodward's "fence has minimal impact and does not hinder or impede the view of the river." We agree. The covenants do not prohibit all fences—they simply require that fences, shrubs, and trees not interfere with the view to the river. Had the original owners wished to prohibit any fencing of the property, or wished to maintain both backyards as a single large open area, such language

9

could, and should, have been part of the covenants. The covenants allow fencing, and we cannot conceive of a less intrusive design of fencing than that utilized by Woodard. We cannot add words to the covenant to achieve the Wagners' goal of preserving a completely open space between their home and the river. Section 1-4-101, MCA. The District Court did not err in so ruling.

¶25 Woodward argues on cross-appeal that the District Court erred in concluding that his deck addition violated covenant #1 and must be removed. Woodward asserted early in the proceeding that he believed his eaves were in compliance with the covenants, and therefore he extended his deck addition to the same reach as the eaves. It was Woodward's intention to comply with the covenants yet improve his property in a manner that would enhance its value and utility. Shortly before the District Court held oral arguments on the parties' motions, Wagners submitted the affidavit of Jeff Larsen, a property surveyor, who disclosed that the eaves of Woodward's home were outside the 90-foot building allowance and in violation of the covenants. As such, the court acknowledged the survey's findings and applied the theory of laches vis-à-vis the covenant violation occasioned by the reach of the eaves of the house.

¶26 The District Court was justified in ruling that laches precluded Wagners from seeking enforcement of the covenants vis-à-vis the eaves of Woodward's home, which had been in place without protest for 10 years. However, the court determined that because the deck addition extended beyond the 90-foot building allowance and was a recent addition, laches did not apply and Wagners were entitled to enforce the covenants

10

as they pertained to the deck addition. The court ordered Woodward to remove the deck addition.

¶27 In *Cole v. State ex rel. Brown*, 2002 MT 32, 308 Mont. 265, 42 P.3d 760, we explained:

> Laches is a concept of equity that can apply when a person is negligent in asserting a right. Laches exists where there has been an unexplainable delay of such duration or character as to render the enforcement of an asserted right inequitable, and is appropriate when a party is actually or presumptively aware of his [or her] rights but fails to act. A party is held to be presumptively aware of his or her rights; where the circumstances of which he [or she] is cognizant are such as to put a [person] of ordinary prudence on inquiry.
>
> We have repeatedly stated that in order to apply the doctrine of laches, a showing must be made that the passage of time has prejudiced the party asserting laches or has rendered the enforcement of a right inequitable. Laches is not a mere matter of elapsed time, but rather, it is principally a question of the inequity of permitting a claim to be enforced. Hence, the doctrine of laches is the practical application of the maxim— Equity aids only the vigilant.

*Cole,* ¶¶ 24-25 (internal citations and quotations omitted). For the following reasons, we conclude that equity requires we apply laches to the deck addition as well.

¶28 Attached to Wagner's Complaint is a letter to Woodward from Wagner's attorney, written before suit was filed. In this letter, counsel states that Woodward's house "foundation appears to be 90 feet south of the north boundary of Lot 1. Therefore, your deck extension is in violation of the covenants." In other words, before the survey was performed, Wagners concluded the deck addition was outside of the 90-foot building envelope because they believed the foundation wall on the south side of Woodward's house marked the southernmost edge of the building envelope. Wagner claimed that if the eaves of Woodward's house were outside the building allowance, he "lacked notice"

of such non-compliance and therefore laches could not be used to preclude him from enforcing the covenants as applied to the eaves. Wagner cannot have it both ways. If he believed, prior to the survey, that Woodward's house foundation wall delineated the 90-foot mark, then he knew, or at least was on notice, that for the past 10 years the eaves of the home were outside the building envelope. Conversely, if he believed the eaves were inside of the building envelope, then his suit against Woodward based upon the deck addition was frivolous and without merit.

¶29 Nonetheless, as Woodward relied upon the reach of the eave to construct his deck addition, and Wagner never previously challenged the eaves as being in violation of the covenants, Woodward was indisputably prejudiced by Wagners' failure to timely seek to enforce the covenants. Moreover, there is nothing in the record to indicate that Wagners were not aware of Woodward's construction projects. The deck extension occurred in June, the west fence in July and the east fence in August. Nothing in the record indicates that Wagners notified Woodward that they believed his projects violated the covenants; rather, they waited until the projects were completed before bringing this action.

¶30 Lastly, Wagners have not argued or established damages resulting from Woodward's deck addition. In fact, given the tree barrier between the homes, Wagners cannot see Woodward's deck addition from their home. Therefore, any violation of the covenant is de minimus. Given Woodward's detrimental reliance on Wagners' failure to timely enforce the covenants as they pertain to the eaves of his home and the absolute absence of damages to the Wagners, it would be inequitable to compel removal of the

12

deck addition. We therefore reverse the District Court's ruling that Woodward's deck addition must be removed.

¶31 We affirm the court's ruling that neither party receive attorney fees or costs. As there is no written attorney fee provision between the parties or statutory requirement that fees and costs be awarded, such an award is within the discretion of the court in a declaratory judgment action under our ruling in *Trs. of Ind. Univ. v. Buxbaum*, 2003 MT 97, ¶ 42, 315 Mont. 210, 69 P.3d 663 ([Section] 27-8-313, MCA, authorizes a court to award attorney fees when the court, in its discretion, deems such an award "necessary or proper."). In the case before us, the court did not abuse its discretion in denying fees and costs to both parties.

¶32 Finally, having granted Woodward the relief he seeks, we need not address the District Court's dismissal of his counterclaim.

## CONCLUSION

¶33 For the foregoing reasons, we affirm the District Court's rulings on denial of attorney fees, its decision to grant Woodward's summary judgment as to his fences, and its application of laches to Wagner's claim of covenant violation as it pertains to the eaves of Woodward's home. We reverse its ruling that Woodward's deck extension violated the covenants and vacate its order requiring Woodward to remove the deck addition from his home.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ JIM RICE

Justice Brian Morris dissents.

¶34    I would affirm entirely the District Court's order.  I dissent.

/S/ BRIAN MORRIS