No. 89-467

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

LEONARD CHRISTIANSON,

    Plaintiff and Appellant,

  v.

RICHARD GASVODA, PAT RYAN
and JACK WHITAKER, acting as
the BOARD OF COUNTY COMMIS-
SIONERS OF CASCADE COUNTY,
State of Montana,

    Defendants and Respondents.

APPEAL FROM:  District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        George McCabe, Jardine, Stephenson, Blewett
        and Weaver, Great Falls, Montana

    For Respondent:

        Patrick Paul, Cascade County Attorney, and
        Stephen E. Hagerman, Deputy Cascade County Attorney,
        Great Falls, Montana

Submitted on Briefs:  March 8, 1990

Decided:  April 5, 1990

Filed:

_____
           Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Leonard Christianson appeals from an order of the Eighth Judicial District, Cascade County, granting summary judgment in favor of respondents Richard Gasvoda, Pat Ryan and Jack Whitaker acting as the Board of County Commissioners (Board). The District Court found that the Board acted properly in denying Christianson's application for approval of a subdivision. The court further found that Christianson had no legal standing to bring this action and that the Board was immune from suit. We affirm.

Because we hold that the Board acted properly in denying Christianson's application, we need not address every issue submitted. The one issue to be addressed is:

Whether the Board properly rejected Leonard Christianson's proposed subdivision plat.

Leonard Christianson (Christianson) is a Great Falls developer who has previously developed three subdivisions. These plats were developed in an area south of Great Falls, Montana in Cascade County. Following development of this property by Christianson, and further subdivision by others not named in this lawsuit, residents of an area known as Gibson Flats began to experience increased drainage and flooding problems. Apparently, the subdivisions are located above Gibson Flats. Precipitation in the form of rain or snowfall, has always drained from this area onto Gibson Flats. However, following development the drainage problem and subsequent flooding has intensified.

Despite these problems, Christianson sought to develop another

subdivision in the area. He therefore entered into a buy-sell agreement with the owners of undeveloped agricultural property which lies next to his existing subdivisions. According to the agreement Christianson agreed to buy the property on the condition that his subdivision plan was approved. Christianson signed the agreement on August 1, 1987. However the owners did not sign until June 23, 1988.

Christianson then filed an application for approval of the proposed subdivision with the Board of County Commissioners. Following this filing, several residents of Gibson Flats objected upon the assertion that the development would increase surface water drainage onto Gibson Flats. On October 3, 1987, the Board approved the preliminary plat on the condition that Christianson provide adequate drainage. Christianson then submitted a supplemental engineering plan, which provided that two water detention ponds would be built that would hold surface water runoff temporarily. According to Christianson's theory, this temporary impoundment would prevent any further flooding of Gibson Flats caused by runoff from his new subdivision.

The residents of Gibson Flats were not satisfied, however, and as a result they continued to object. The Board investigated further and it also began to doubt that the detention ponds would solve the flooding problem. In particular, it found Christianson's engineering plan and the testimony of his expert witness, who offered different testimony at two separate Board hearings, unconvincing. Consequently, the Board rejected Christianson's

application on November 18, 1987.  In rejecting the application, the Board maintained that no further development should occur until the drainage problem, caused by prior development, was solved.

Following this denial, Christianson filed an action in District Court seeking damages for inverse condemnation.  Both parties filed motions for summary judgment.  The Board's motion was granted on June 15, 1989.  This appeal follows.

In determining whether subdivision approval should be given the Board must determine whether the proposed development is in the public interest.  Section 76-3-608(1), MCA.  The Board, basing their decision upon all of the evidence presented, found that Christianson's proposal was not in the public interest.  This decision was within the scope of their discretion and therefore their denial should be upheld.  Pearson Kent Corporation v. Bear (New York 1971), 271 N.E.2d 218.

The District Court, in its review of the Board's actions, found that there was substantial evidence that the proposed subdivision would adversely affect public health, safety and welfare.  In particular, it found that the flooding problems which were exacerbated by previous development justified rejection of the proposed plat.  The Board based its conclusion upon testimony given at Board hearings, numerous letters submitted by the public, and personal observations of the problems at Gibson Flats.  Moreover, the Board, as fact finders, were in the best position to weigh conflicting testimony and determine the credibility of the witnesses.  They chose not to accept the testimony of

4

Christianson's expert because he changed his opinion concerning the drainage on at least one occasion and his testimony conflicted with the Board's experience with the Gibson Flats problem. In short we hold that the Board's decision to deny further development pending resolution of existing drainage problems and assurances that this development would not further contribute to the problem was not an abuse of discretion.

Moreover we also note that even assuming the Board's decision was incorrect, Christianson did not suffer any real damages. At the time of denial, he was not the owner of the property in question, nor did he have any interest therein. The sellers of the land did not sign the buy-sell agreement until June 23, 1988. The denial occurred on November 16, 1987 and this lawsuit was filed on January 28, 1988. Therefore, Christianson had no possible legal interest in the land until seven months following the denial of his application and five months following the instigation of this lawsuit. Furthermore, the buy-sell agreement was conditional and Christianson's obligation to buy did not arise until subdivision approval was granted. Given these facts, Christianson did not have any standing to maintain this litigation.

The judgment of the District Court upholding the Board of County Commissioners is affirmed.

_____
Justice

We Concur:

_____

John C. Shirley

Diane G. B...

_____
Justices