DA 10-0069

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 274

MM&I, LLC, a Montana Limited Liability Company,

  Plaintiff and Appellant,

 v.

BOARD OF COUNTY COMMISSIONERS OF
GALLATIN COUNTY, a political subdivision of
the State of Montana, and John Does 1 through 3,

  Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighteenth Judicial District, In and For the County of Gallatin, Cause No. DV 03-471 Honorable John C. Brown, Presiding Judge |

COUNSEL OF RECORD:

  For Appellant:

    Michael S. Kakuk, Kakuk Law Offices, PC, White Sulphur Springs,
    Montana

  For Appellee:

    Jennifer L. Farve, Moore, O'Connell & Refling, P.C., Bozeman, Montana

       Submitted on Briefs: September 15, 2010

           Decided: December 21, 2010

Filed:

   _____
         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    MM&I, LLC (MM&I) appeals an order of the District Court for the Eighteenth Judicial District, Gallatin County, granting the Gallatin County Board of County Commissioners' (the Commission) Motion for Summary Judgment regarding its denial of MM&I's subdivision application.

¶2    MM&I raises three issues on appeal which we have restated as follows:

¶3    1.   Whether the District Court abused its discretion in refusing to consider post-hearing deposition testimony of members of the Commission.

¶4    2.   Whether the District Court erred in concluding that the Commission's denial of MM&I's subdivision application was not arbitrary and capricious.

¶5    3.   Whether the District Court erred in ruling that the Commission did not violate § 76-3-608(5)(b), MCA.

## Factual and Procedural Background

¶6    In the fall of 2002, MM&I applied for preliminary plat approval of the Riverfront Park Subdivision consisting of 143 single family lots ranging in size from one-half to one acre and one condominium lot on 1.6 acres.  The proposed subdivision would be located east of Belgrade off Spain Bridge Road, near its intersection with Airport Road, and adjacent to the East Gallatin River.  Because MM&I's proposed subdivision met with opposition from neighbors and adjoining landowners, MM&I withdrew its application in favor of a revised application which MM&I submitted to the Belgrade City-County Planning Board (the Board) in May 2003.  This revised application reduced the density of the subdivision from 143 single family lots with one condominium lot to 135 single

2

family lots with one lot for up to 16 condominiums. The revised application also included plans for a community well and septic system, and reconfigured the layout of the lots. By a vote of three to two, the Board recommended conditional preliminary plat approval of the subdivision.

¶7 MM&I's subdivision application came before the Commission on June 3, 2003. There was substantial opposition to the subdivision in the form of public comments, letters, and material submitted prior to the hearing. The Commission reconvened on June 24, 2003, to discuss the proposed subdivision and issue its findings. Citing unmitigated impacts to the statutory primary review criteria, the Commission denied the application by a vote of two to one.

¶8 MM&I brought suit against the Commission on September 10, 2003, pursuant to § 76-3-625, MCA, seeking to overturn the Commission's denial of their subdivision application and seeking damages for lost profits. However, almost three years elapsed before MM&I served its lawsuit on the Commission.

¶9 On December 31, 2008, the Commission moved for summary judgment requesting dismissal of all claims against it on the grounds that it's denial of the application was supported by law and fact, and was not arbitrary, capricious or unlawful. MM&I filed a cross motion for summary judgment arguing that there was no evidence in the record to support the Commission's findings of unmitigated impacts from the proposed subdivision, thus denial of the preliminary plat was unlawful. The parties agreed that no issues of material fact were in dispute. The District Court heard oral argument on the motions on April 20, 2009.

3

¶10 On December 16, 2009, the District Court issued an order wherein it granted the Commission's motion for summary judgment and denied MM&I's motion. The court reasoned that the Commission's denial of MM&I's subdivision application was not random, unreasonable or unmotivated because the Commission considered the testimony and evidence before it; applied the facts to the relevant and appropriate review criteria from the subdivision regulations and statutes; commented on the information presented; and explained its reasons for the denial at the public hearing and in its written order. Based on this record, the court determined that the Commission's denial of MM&I's subdivision application was not arbitrary, capricious or unlawful. MM&I appeals the court's decision.

**Standard of Review**

¶11 We review a District Court's order granting summary judgment de novo. *Goettel v. Estate of Ballard*, 2010 MT 140, ¶ 10, 356 Mont. 527, 234 P.3d 99 (citing *Waters v. Blagg*, 2008 MT 451, ¶ 8, 348 Mont. 48, 202 P.3d 110; *Bowyer v. Loftus*, 2008 MT 332, ¶ 6, 346 Mont. 182, 194 P.3d 92). In doing so, we apply the criteria contained in M. R. Civ. P. 56 to determine whether the moving party has established both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Goettel*, ¶ 10 (citing *Watson v. Dundas*, 2006 MT 104, ¶ 16, 332 Mont. 164, 136 P.3d 973; *Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, 119 P.3d 47).

¶12 In addition, we review a district court's findings of fact to determine if those findings are clearly erroneous. *Goettel*, ¶ 11 (citing *Watson*, ¶ 17; *Ramsey v. Yellowstone Neurosurgical Assocs.*, 2005 MT 317, ¶ 13, 329 Mont. 489, 125 P.3d 1091). We also

4

review a district court's conclusions of law for correctness. *Goettel*, ¶ 11 (citing *Watson*, ¶ 17; *Galassi v. Lincoln County Bd. of Com'rs*, 2003 MT 319, ¶ 7, 318 Mont. 288, 80 P.3d 84).

**Discussion**

¶13 Although this was not one of the issues raised by the Commission on appeal, we feel it necessary to point out as a preliminary matter that service of process should be made promptly. In this case, the Commission denied MM&I's proposed preliminary plat in a written order dated August 11, 2003, and MM&I filed this action in the District Court on September 10, 2003. However, MM&I did not perfect service on the Commission until September 8, 2006.

¶14 Section 76-3-625(2), MCA, requires a party who is aggrieved by a decision of a governing body approving or denying an application for a proposed subdivision or final subdivision plat, to appeal to the district court within 30 days from the date of the written decision. Here, the appeal was timely filed, but inexplicably, MM&I did not serve its complaint for judicial review until nearly three years later.

¶15 The appeal process in subdivision approval cases is meant to provide judicial review of an administrative action. *See* § 76-3-625, MCA. While the Montana Subdivision and Platting Act (the MSPA) (Title 76, chapter 3, MCA) is not by its terms expressly controlled by the Montana Administrative Procedure Act (MAPA) (Title 2, chapter 4, MCA), MAPA is nonetheless instructive. We have previously looked to administrative law procedures and standards of review in interpreting the MSPA. *See e.g. Aspen Trails Ranch, LLC v. Simmons*, 2010 MT 79, ¶ 16, 356 Mont. 41, 230 P.3d

5

808 (the governing body is held to the same "hard look" standard as agencies when reviewing environmental assessments); *Richards v. County of Missoula*, 2009 MT 453, ¶ 37, 354 Mont. 334, 223 P.3d 878 (district courts sit in judicial review of the governing body and must look to the record); *Madison River R.V. Ltd. v. Town of Ennis*, 2000 MT 15, ¶ 30, 298 Mont. 91, 994 P.2d 1098 (applying the "arbitrary and capricious" standard of review to governing body decisions). Under MAPA, aggrieved parties must appeal final decisions within 30 days—the same time limit as is required under the MSPA. Moreover, under MAPA, appeals from a final administrative decision must be "promptly served upon the agency and all parties of record." Section 2-4-702(2)(a), MCA. No similar requirement is expressly imposed in the MSPA.

¶16 Because appeals in MSPA matters are akin to other administrative appeals, service of such appeals should be "prompt." Presumably, there is a 30-day window for appeal to the district court by a party seeking to overturn a decision approving or denying a subdivision application so as to bring reasonably swift finality to the subdivision process. Allowing three years to accomplish service of such appeals, as permitted in civil actions under M. R. Civ. P. 4E(1), is counterproductive of this goal and frustrates the intent of the MSPA.

¶17 What constitutes "prompt" service is a determination to be made under the facts of each case. In *Rierson v. State*, 188 Mont. 522, 614 P.2d 1020 (1980), the plaintiff appealed from a decision of the district court dismissing his petition for judicial review of an administrative decision for lack of "prompt" service. In affirming the district court's dismissal, this Court stated: "[T]he plain meaning of 'promptly' is ready and quick to

6

act, depending largely on the facts of each cause." *Rierson*, 188 Mont. at 527, 614 P.2d at 1023. The Court in *Rierson* concluded that a delay of sixteen and one-half months before serving the amended complaint was not reasonable under the facts there at issue. The Court further rejected the argument that M. R. Civ. P. 41(e) (now M. R. Civ. P. 4E(1)) applies to service of petitions on agencies for judicial review of administrative decisions. *Rierson*, 188 Mont. at 527, 614 P.3d at 1023.

¶18 While service of process in the case before us on appeal was technically timely, it certainly was not prompt. It is evident that MM&I's delay in serving its summons and complaint not only delayed significantly review of the matter at issue here, but, as well, severely impaired the Commission's ability to defend, after the fact, its actions with respect to MM&I's subdivision application. Delay in serving process in MSPA judicial review actions serves no one. Accordingly, we strongly admonish counsel in future cases to serve process promptly when the case involves judicial review of subdivision applications.

**Issue 1.**

¶19 *Whether the District Court abused its discretion in refusing to consider post-hearing deposition testimony of members of the Commission.*

¶20 On September 22, 2008, MM&I deposed Commissioners John Vincent and Jennifer Smith-Mitchell. Commissioners Vincent and Smith-Mitchell had voted against the proposed subdivision in June 2003, more than five years prior to these depositions. MM&I contends that it presented this deposition testimony to the District Court to establish that the Commission denied MM&I's subdivision application based on the

7

Commissioners' own personal opinions and beliefs, and not on the evidence presented at the Commission's hearings on the matter. Citing *Kiely Const. L.L.C. v. City of Red Lodge*, 2002 MT 241, 312 Mont. 52, 57 P.3d 836, the District Court declined to consider this deposition testimony because it was not part of the record. MM&I now contends that the District Court misapplied the *Kiely* test and thereby erred in not considering this deposition testimony because it would have shown that there was no evidence in the record to support the Commission's decision.

¶21 In *Kiely*, after the plaintiff's subdivision application was denied by the Red Lodge City Council (Red Lodge), the plaintiff appealed to the district court. The court determined that Red Lodge had acted arbitrarily, capriciously and unlawfully in denying the plaintiff's application and ordered that Red Lodge conditionally approve the application subject to certain conditions recommended by the Carbon County Planning Board. *Kiely*, ¶ 18. Red Lodge appealed to this Court arguing, among other things, that the district court erred by refusing to admit the testimony of various council members to explain the individual members' reasons for the denial. *Kiely*, ¶¶ 93, 96.

¶22 We declined in *Kiely* to consider the after-the-fact opinions of the council members regarding the reasons for their denial of the subdivision. Analogizing the situation to that of post-enactment statements of legislators, we stated in *Kiely* that since the statements were not part of the record, they were not relevant and the court was correct in not considering them. *Kiely*, ¶ 97 (citing *Slaven v. BP America, Inc.*, 973 F.2d 1468, 1475 (9th Cir. 1992); *Hazardous Waste Treatment Council v. U.S. EPA*, 886 F.2d 355, 365 (D.C. Cir. 1989)).

8

¶23 MM&I contends that the deposition testimony in the instant case showed that the Commissioners abused their discretion by ignoring facts and evidence in the record and instead based their decision on their own personal opinions and beliefs. Thus, MM&I argues that the depositions were relevant and admissible under both *Kiely* and this Court's decision in *Aspen Trails* wherein we stated that " '[i]t was appropriate for the District Court, in applying the [arbitrary, capricious, or unlawful] standard, to accept new evidence and not to limit its review to the administrative record.' " *Aspen Trails*, ¶ 53 (quoting *Skyline Sportsmen v. Bd of Land Com'rs*, 286 Mont. 108, 951 P.2d 29 (1997)). However, MM&I's reliance on *Aspen Trails* is misplaced.

¶24 The developer in *Aspen Trails* submitted an environmental assessment (EA) of his proposed subdivision along with the subdivision application to the Helena City Commission. In addition, a report on the proposed subdivision was prepared by the City of Helena Planning Division (the Staff Report). *Aspen Trails*, ¶¶ 3-4. After reviewing the EA and the Staff Report and taking public comment on the proposed subdivision, the Helena/Lewis and Clark County Consolidated Planning Board (the Planning Board) voted to deny the subdivision application on the basis that the development's impacts on the natural environment, wildlife, and wildlife habitat could not be mitigated. *Aspen Trails*, ¶ 5. The Helena City Commission later voted to approve the preliminary plat after it determined that any detrimental impacts resulting from the subdivision could be mitigated with appropriate measures. *Aspen Trails*, ¶ 6. Thereafter, three neighboring landowners filed suit in the district court against the Helena City Commission challenging its decision to approve the preliminary plat. *Aspen Trails*, ¶ 7.

9

¶25    The district court held a one-day evidentiary hearing in the matter at which the landowners and the Helena City Commission presented testimony and evidence. *Aspen Trails*, ¶ 11. The landowners contended that the preliminary plat should be voided because the EA did not adequately address the resulting impacts from the proposed subdivision on the water quality of the Prickly Pear Creek and the Lake Helena watershed. The District Court permitted the landowners to introduce expert testimony supporting that contention. The landowners also contended that the Staff Report did not adequately address the environmental and community impacts arising from the subdivision on other water quality issues. *Aspen Trails*, ¶¶ 10-11. The Helena City Commission disputed these contentions arguing that the EA adequately addressed the impacts complained of by the plaintiffs, and that the conditions attached to the approval of the subdivision properly mitigated any adverse effects from the subdivision. *Aspen Trails*, ¶ 14. The district court subsequently voided the preliminary plat for the subdivision. *Aspen Trails*, ¶ 15. On appeal, we concluded that the district court did not err when it conducted an evidentiary hearing and received additional testimony regarding the adequacy of the EA. *Aspen Trails*, ¶ 53.

¶26    Nevertheless, the testimony admitted in *Aspen Trails* was vastly different than the deposition testimony in the case *sub judice*. In *Aspen Trails*, the testimony was in the form of additional information from an expert witness regarding the condition of the subject property which was not contained in the EA—information which should have been included by law. *Aspen Trails*, ¶¶ 55-56. On the other hand, the deposition testimony in the instant case concerned the Commissioners' thought processes regarding

10

actions taken more than five years earlier and where at least one of the Commissioners repeatedly stated that she did not recall the specifics of the matter.

¶27 Accordingly, we hold that the District Court did not abuse its discretion in refusing to consider the post-hearing deposition testimony of two of the members of the Commission.

**Issue 2.**

¶28 *Whether the District Court erred in concluding that the Commission's denial of MM&I's subdivision application was not arbitrary and capricious.*

¶29 We review a district court's ruling made pursuant to § 76-3-625, MCA, the same way we review decisions from administrative agencies—we determine whether the record establishes that the agency [i.e., the governing body] acted arbitrarily, capriciously or unlawfully. *Hansen v. Granite County*, 2010 MT 107, ¶ 21, 356 Mont. 269, 232 P.3d 409 (citing *Kiely*, ¶ 69). In addition, when we review an action under the "arbitrary and capricious" standard "a reversal of the appealed ruling is not permitted merely because the record contains inconsistent evidence or evidence which might support a different result. Rather, the decision being challenged must appear to be random, unreasonable, or seemingly unmotivated, based on the existing record." *Hansen*, ¶ 21 (internal quotations, citations, and emphasis omitted).

¶30 Furthermore, "[w]hile the record may contain conflicting evidence, as long as a substantial amount of the evidence supports the governing body's decision and the governing body explains why it weighed certain evidence as more credible than other evidence, the governing body's decision should be upheld." *Hansen* ¶ 40 (citing

11

*Richards*, ¶ 22; *Englin v. Board of County Com'rs*, 2002 MT 115, ¶¶ 20, 27, 310 Mont. 1, 48 P.3d 39).

¶31 Here the Commission denied MM&I's subdivision application on the basis that the proposed subdivision adversely impacted, among other things, public health and safety, education, and agriculture, and that MM&I had not presented adequate mitigation of these adverse impacts. We discuss each of these adverse impacts in turn.

*Impacts to Public Health and Safety*

¶32 The Commission's concerns regarding public health and safety stemmed partly from the density of the proposed subdivision. The initial subdivision proposal called for 143 single family residential lots and one condominium lot. The revised subdivision proposal reduced the density of the subdivision only slightly with eight fewer single family residential lots.

¶33 The density of the proposed subdivision raised concerns about the adverse impacts to traffic in the area on an already congested road. The Traffic Impact Study (TIS) prepared by Robert Peccia & Assoc. (Peccia) concluded that the proposed subdivision would increase traffic on Spain Bridge Road and Airport Road by 1376 trips per day at full build-out. According to Peccia, drivers leaving the subdivision would proceed to Airport Road and either turn east and head towards Bozeman or turn west and head to Belgrade. In the TIS, Peccia estimated that 70% of drivers would turn east on Airport Road to connect with Springhill Road and then continue to Bozeman. Peccia further estimated that only 30% of drivers would travel west along Airport Road to connect with Frontage Road and continue west towards Belgrade.

12

¶34    In the hearings on MM&I's subdivision application,  Commissioner Vincent questioned the accuracy of Peccia's assumption that only 30% of drivers would travel west towards Belgrade.  In addition, Commissioner Vincent noted that the TIS did not address the increased truck traffic that would be operating on Frontage Road from a new gravel pit in the area.  The Commission found that the adverse impacts to the existing road and surrounding areas could be mitigated only by major improvements to Frontage Road or by a new interstate interchange, neither of which presented a feasible option for mitigation under the circumstances.

¶35    Since the Commission acts as the fact-finder in proceedings involving subdivision review, it was not required to agree with the TIS.  *Christianson v. Gasvoda*, 242 Mont. 212, 214-15, 789 P.2d 1234, 1236 (1990).  And, as the Commission points out in its brief on appeal, MM&I cited no authority contradicting *Christianson* or supporting MM&I's contention that the Commissioners erred in drawing upon their personal experiences in weighing the credibility of the TIS.  Moreover, contrary to MM&I's assertions, the Commissioners are not prohibited from drawing upon their own experiences when considering primary review criteria.  We held in *Christianson* that the commissioners in that case did not err in disregarding expert testimony and, instead, basing their conclusions on their personal observations at the site.  *Christianson*, 242 Mont. at 214-15, 789 P.2d at 1236.

¶36    The Commission also found that public health and safety would be adversely impacted due to the Subdivision's relatively long distance from local services and the general lack of police protection in the area.  The Gallatin County Sheriff submitted a

13

letter to the Commission wherein he stated that his department did not have enough deputies to provide adequate police protection for the proposed subdivision. At the time, Gallatin County did not have a mitigation plan regarding law enforcement whereby it could impose a fee upon each residence in the subdivision to assist in hiring additional deputies. MM&I offered to contribute $5000 to the Sheriff's Office to go toward a study that would set some standards and criteria for establishing impact fees for law enforcement. Because the Sheriff verbally accepted that offer, MM&I claimed that this impact had been mitigated. However, this did not actually mitigate the problem as it only set up a study to consider possible mitigation.

### *Impacts to Education*

¶37 The Superintendent of Schools, Herbert Benz, indicated that the proposed subdivision would not have a negative impact on the Belgrade School System. However, the Commission did not find this testimony credible because it ran contrary to prior statements made by Benz. In an article published in the October 21, 2002 *Bozeman Daily Chronicle,* Benz claimed that the Belgrade School System was running out of classroom space, and that the situation was bound to get worse.

### *Impacts to Agriculture*

¶38 The Commission determined that dispersed residential development in Gallatin County, as would be the case with the proposed subdivision, was contrary to the Belgrade Area Plan. This plan was adopted by the Belgrade City-County Planning Board in 1999. It listed among its objectives the promotion of open space, the protection and preservation of agriculture, and the avoidance of "leap frog" developments. Additionally,

14

a representative of an adjoining landowner, Montana Perennial Farms, testified that the subdivision would adversely affect its gardening business. Based on this information, the Commission concluded that the proposed subdivision would have an adverse impact on agriculture because there was not an adequate buffer between it and the surrounding farm lands.

¶39 We noted earlier in this Opinion that when we review an action under the "arbitrary and capricious" standard "a reversal of the appealed ruling is not permitted merely because the record contains inconsistent evidence or evidence which might support a different result. Rather, the decision being challenged must appear to be random, unreasonable, or seemingly unmotivated, based on the existing record." *Hansen*, ¶ 21 (internal quotations, citations, and emphasis omitted).

¶40 Here we agree with the District Court that the Commission's decision to deny MM&I's subdivision application was not random, unreasonable, or unmotivated because the Commission considered the testimony and evidence before it; applied the facts to the relevant and appropriate review criteria from the subdivision regulations and statutes; commented on the information presented; and explained its reasons for the denial at the public hearing and in its written order.

¶41 Accordingly, we hold that the District Court did not err in concluding that the Commission's decision was not arbitrary, capricious or unlawful.

**Issue 3.**

¶42 *Whether the District Court erred in ruling that the Commission did not violate § 76-3-608(5)(b), MCA.*

15

¶43    MM&I argues that the District Court erred in ruling that the Commission did not violate § 76-3-608(5)(b), MCA, when the Commission failed to consult with MM&I regarding required mitigation to reduce some of the perceived impacts resulting from the proposed development.  However, MM&I offers no authority in support of its position.

¶44    This Court has repeatedly held that we must seek to implement the intention of the Legislature when interpreting a statute.  *In re K.M.G.*, 2010 MT 81, ¶ 26, 356 Mont. 91, 229 P.3d 1227 (citing § 1-2-102, MCA; *Montana Vending v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499).  We determine the intention of the Legislature first from the plain meaning of the words used, and if interpretation of the statute can be so determined, we may not go further and apply any other means of interpretation.  *State v. Trull*, 2006 MT 119, ¶ 32, 332 Mont. 233, 136 P.3d 551 (citing *Dunphy v. Anaconda Co.*, 151 Mont. 76, 79-81, 438 P.2d 660, 662 (1968)); *see also Tongue River Elec. Coop. v. Montana Power Co.*, 195 Mont. 511, 515, 636 P.2d 862, 864 (1981); *Haker v. Southwestern R.R.*, 176 Mont. 364, 369, 578 P.2d 724, 727 (1978); *State ex rel. Huffman v. District Court*, 154 Mont. 201, 204, 461 P.2d 847, 849 (1969).  "In the search for  plain  meaning, 'the language used must be reasonably and logically interpreted, giving words their usual and ordinary meaning.' "  *Gaub v. Milbank Ins. Co.*, 220 Mont. 424, 427, 715 P.2d 443, 445 (1986) (quoting *In re McCabe*, 168 Mont. 334, 339, 544 P.2d 825, 828 (1975)).

¶45    In this case, a plain reading of § 76-3-608(5)(b), MCA, does not support MM&I's contentions.  "When *requiring* mitigation under subsection (4), a governing body shall consult with the subdivider and shall give due weight and consideration to the expressed

16

preference of the subdivider." Section 76-3-608(5)(b), MCA (emphasis added). MM&I contends that the analysis under § 76-3-608(5)(b), MCA, should be a two-part test: (1) Did the Commission require mitigation? (2) If the Commission did require mitigation, did it consult with MM&I?

¶46 In this case, the Commission determined that public health and safety would be adversely impacted by the increase in traffic stemming from the proposed subdivision. The Commission found that these adverse impacts to the existing road and surrounding areas could be mitigated only by major improvements to the road or by a new interstate interchange, neither of which presented a feasible option for mitigation under the circumstances. Because the Commission determined that the impact to public health and safety could not be adequately mitigated, it did not "require" mitigation. And, pursuant to § 76-3-608(5), MCA, since the Commission did not "require" mitigation, there was no need to consult with MM&I regarding its preference for mitigation. Thus, MM&I did not meet part one of its own two-part test.

¶47 Accordingly, we hold that the District Court did not err in ruling that the Commission did not violate § 76-3-608(5)(b), MCA.

¶48 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

17