

DA 11-0721

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 236

JOHN RICHARDS,

       Plaintiff and Appellant,

  v.

COUNTY OF MISSOULA, a political
subdivision of the State of Montana,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 11-474
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Richard A. Reep; Reep, Bell & Laird, P.C., Missoula, Montana

       For Appellee:

       Fred Van Valkenburg, Missoula County Attorney; D. James McCubbin,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  June 6, 2012
Decided:  October 23, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 John Richards (Richards) appeals an order of the Fourth Judicial District Court, Missoula County, that granted summary judgment to the County of Missoula (County). We affirm.

¶2 Richards raises the following issues:

¶3 *Whether the District Court abused its discretion by not allowing Richards to conduct further discovery before ruling on the summary judgment motion?*

¶4 *Whether the District Court properly granted summary judgment to the County on the Board of County Commissioners' decision to deny the subdivision?*

¶5 *Whether the County was entitled to summary judgment on Richards's regulatory taking claim?*

¶6 Richards purchased property near Clearwater Junction in 2005. He intended to develop this 200-acre property into a rural subdivision. Richards submitted an application for a 119-lot subdivision to the County in 2006. The Board of Missoula County Commissioners (Board) denied the application.

¶7 Richards modified the proposal to a 59-lot subdivision that the Board considered in 2007. Montana Fish, Wildlife, and Parks (FWP) provided comments during the subdivision review in which it recommended that the Board approve a density of no more than 20 residential lots due to concerns about wildlife habitat. The Board denied Richards's application for the 59-lot subdivision based, in part, upon the adverse effects on wildlife. The district court denied Richards's petition for judicial review. We affirmed. *Richards v. Co. of Missoula*, 2009 MT 453, 354 Mont. 334, 223 P.3d 878 (*Richards I*).

¶8 Richards worked with FWP to mitigate adverse effects on wildlife in another effort to develop the property. Richards proposed, among other things, to place a fence around the entire subdivision to prevent interaction between residents and wildlife. FWP suggested to Richards that it had no objection to his development in light of his proposed mitigation. Richards eventually submitted an application in 2010 to the County for another 59-lot subdivision. He argued that the County should approve the proposed subdivision in light of FWP's apparent agreement with his proposed mitigation.

¶9 FWP eventually switched its position, though, on December 2, 2010—after Richards had submitted his application and approximately one month before the Board considered that application. FWP encountered new research regarding black bears, grizzly bears, and human-bear conflicts in the proposed subdivision area. This research apparently supported FWP's previous recommendation that the Board deny the subdivision, and FWP advised the Board that its 2006 and 2007 comments and opposition still applied to Richards's 2010 application.

¶10 The Board considered Richards's application at a public meeting on January 12, 2011. The Board voted unanimously to reject the proposed subdivision. The Board issued extensive findings of fact and conclusions of law to support this decision. The Board denied the application due to its lack of compliance with state law, lack of compliance with Missoula County Growth Plan, and lack of compliance with Missoula County Subdivision Regulations. The Board also noted the potential adverse impact to the wildlife habitat.

¶11 Richards filed a petition for judicial review of the Board's decision. Richards alternatively claimed that the Board's actions constituted a regulatory taking that entitled him

3

to just compensation. The County moved for summary judgment. Richards responded to the merits of the County's motion. Richards also sought to depose various officials from FWP to determine the basis for its opposition to the proposed subdivision. The District Court denied this request due to Richards's failure to justify how these depositions would affect the summary judgment proceedings. The District Court also granted summary judgment to the County on all of Richards's claims. Finally, the District Court granted summary judgment to the County with respect to Richards's takings claim. Richards appeals.

## STANDARD OF REVIEW

¶12     We review for an abuse of discretion a district court's decision regarding an M. R. Civ. P. 56(f) request to conduct further discovery. *Richards I*, ¶ 33. We review for correctness a district court's decision to grant summary judgment. *Dubiel v. Mont. Dept. of Transp.*, 2012 MT 35, ¶ 10, 364 Mont. 175, 272 P.3d 66.

## DISCUSSION

¶13     *Whether the District Court abused its discretion by not allowing Richards to conduct further discovery before ruling on the summary judgment motion?*

¶14     The Montana Rules of Civil Procedure allow a party to respond to a summary judgment motion by requesting more time to conduct discovery. M. R. Civ. P. 56(f). A party making the request must provide the court with an affidavit that includes "specified reasons" why the party cannot present facts essential to justify its opposition. M. R. Civ. P. 56(f). The party must state in the affidavit the facts that it seeks to discover, the reason why that party has been unable to obtain those facts, and why those facts are material to its summary judgment opposition. *See* M. R. Civ. P. 56(f); *Richards I*, ¶ 33.

4

¶15 Richards's affidavit provides no appearance, on its face, that it is an affidavit in support of his M. R. Civ. P. 56(f) motion. The five-page affidavit instead mainly contains statements of alleged disputed facts which he used to oppose summary judgment. Richards's affidavit includes only one sentence that states what further discovery he would like to conduct. He fails to explain how this further discovery would have been used to defeat summary judgment. *Richards I*, ¶ 33. Richards has failed, once again, to comply with M. R. Civ. P. 56(f). *Richards I*, ¶ 34. The District Court accordingly did not abuse its discretion by denying Richards's request to conduct further discovery. *See Richards I*, ¶ 35.

¶16 *Whether the District Court properly granted summary judgment to the County on Board of County Commissioners' decision to deny the subdivision?*

¶17 We limit our judicial review of a governing body's decision to grant or deny a subdivision to whether the governing body acted in an arbitrary and capricious fashion, or to whether the body's decision is unlawful. *Citizens for Responsible Dev. v. Bd. of Co. Commrs.*, 2009 MT 182, ¶ 8, 351 Mont. 40, 208 P.3d 876. We do not consider whether the governing body's decision is correct. *Keily Constr. LLC v. City of Red Lodge*, 2002 MT 241, ¶ 69, 312 Mont. 52, 57 P.3d 836.

¶18 We instead review whether the County carefully considered and addressed the information before it, and whether the County acted largely in conformance with that information. *See Richards I*, ¶ 22. The body's decision accordingly must be random, unreasonable, or seemingly unmotivated in order for this Court to reverse the governing body's decision as arbitrary and capricious. *Kiely*, ¶ 69. We limit this review to consideration of the record before the governing body when it issued its decision. *Richards*

5

*I*, ¶ 24.

¶19     Richards argues that the County's denial of his application constituted an arbitrary and capricious decision. Richards notes that he worked extensively with FWP. FWP expressed a willingness to withdraw its opposition based on these meetings. FWP ultimately reversed course one month before the subdivision review. FWP opposed Richards's subdivision based on newly acquired scientific research regarding wildlife in the proposed subdivision area. Richards challenges this research and the veracity of FWP's report. He contends that a factual dispute exists regarding the veracity of FWP's report. Richards argues, in effect, that he can establish the arbitrary and capricious nature of the County's decision by undermining FWP's report.

¶20     Richards relies on the false premise that he can attack FWP's report on judicial review with information not contained in the administrative record. This Court long has stated that it will consider only the record before the governing body in reviewing whether the body's decision is arbitrary and capricious. *Richards I*, ¶ 24. Correspondingly, we have determined that the governing body—not the courts—should assess the credibility of information and arbitrate disputes over conflicting information. *Richards I*, ¶ 22.

¶21     Richards argues that this Court's decision in *Aspen Trails Ranch, LLC v. Simmons*, 2010 MT 79, ¶ 53, 356 Mont. 41, 230 P.3d 808*,* stands for the proposition that a party who challenges a governing body's decision on a subdivision application should be able to rely upon "extraneous evidence" not contained in the administrative record. More specifically, Richards contends that he should be allowed to undertake discovery to determine whether

6

the "new science" upon which FWP allegedly relied can be attacked as "faulty, inadequate or unscientific."

¶22    Neighboring landowners in *Aspen Trails* challenged the adequacy of the environmental assessment (EA) prepared as part of the subdivision review process. The neighbors argued that § 76-3-603, MCA, required additional information regarding the condition of the subject property to have been included in the EA. *Aspen Trails*, ¶¶ 55-56. We determined that the district court had not abused its discretion in allowing the neighbors to present expert testimony regarding the condition of the subject property that had not been included in the EA. *Aspen Trails*, ¶ 53.

¶23    The County characterizes *Aspen Trails* as an extremely limited exception to the general rule that a court must limit its review to consideration of the record before the governing body when it issues its decision. *Richards I*, ¶ 24. The County distinguishes *Aspen Trails* on the basis that the district court allowed the testimony "to determine the adequacy of the record for a subdivision review." By contrast, the County characterizes Richards's efforts as an attempt to "re-evaluate" the record for a subdivision review. We agree.

¶24    We rejected in *MM&I, LLC v. Bd. of Co. Commrs. of Gallatin Co.*, 2010 MT 274, ¶ 26, 358 Mont. 420, 246 P.3d 1020, a similar effort to "re-evaluate" the decision of the board of county commissioners on a proposed subdivision. The plaintiffs in *MM&I* sought to introduce on judicial review deposition testimony regarding the individual commissioners' thought processes about actions taken more than five years earlier. *MM&I*, ¶ 23. The plaintiffs sought to demonstrate that the commissioners had abused their discretion by

7

ignoring facts and evidence in the record and instead had based their decision on their own personal opinions and beliefs. *MM&I*, ¶ 23. At least one of the commissioners repeatedly stated that she did not recall the specifics of the matter. *MM&I*, ¶ 26. We determined that the district court had not abused its discretion in excluding the deposition testimony. *MM&I*, ¶ 27.

¶25 Richards disputes the accuracy of the comments that FWP submitted regarding the proposed subdivision that formed the basis for the FWP report. The Board serves as the sole arbiter of disputed facts. *Richards I*, ¶ 22. A party possesses no right to an evidentiary hearing when he challenges a governing body's decision that it reached after consideration of competing evidence during a subdivision review. *Richards I*, ¶ 22. Richards cites nothing in the record to suggest that we should re-evaluate the Board's reliance on the FWP report. Richards accordingly lacks any basis to attack collaterally the FWP report on judicial review.

¶26 Moreover, Richards makes no attack whatsoever against the Board's other reasons for denying his proposed subdivision. The Board provided numerous reasons for denying the application and cited extensive findings of fact to support each reason. For example, the subdivision violated the County's growth policy. The subdivision would have deleterious impacts on agricultural water user facilities. The subdivision failed to comply with state irrigation laws. The subdivision failed to comply with the County's Primary Travel Corridor requirement. The subdivision would have extensive impacts upon the environment, wildlife, and wildlife habitat pertaining to Blanchard Creek. The demand from the subdivision would exceed the carrying capacity of the wells and septic systems. Richards cites nothing in the record to demonstrate that any of the Board's conclusions were random or unreasonable.

8

*Kiely*, ¶ 69.

¶27　Richards next challenges the lawfulness of the Board's decision.  He first contends that the County had to provide proper deference to his mitigation proposal as required under § 76-3-608(5)(b), MCA.  Richards had proposed placing a fence around the subdivision. He argued that this fence would mitigate sufficiently FWP's concern about wildlife-human interactions.  He contends that the County acted unlawfully in failing to accord any deference to this mitigation.

¶28　A governing body must offer this deference only when it requires mitigation. *MM&I, LLC*, ¶ 46.  This mitigation normally arises in the context of a decision conditionally to approve a proposed subdivision.  *See MM&I, LLC*, ¶ 46.  The governing body possesses no obligation to defer when it determines that its concerns cannot be mitigated adequately. *MM&I, LLC*, ¶ 46.   The Board denied outright Richards's application due to its determination that its concerns could not be mitigated adequately.   Thus, the Board possessed no duty to defer to Richards's proposed mitigation.

¶29　Moreover, Richards's planned mitigation addressed only the Board's first concern— human-wildlife interaction.  Richards's planned mitigation actually exacerbated the Board's second concern—removal of wildlife habitat.   Indeed, FWP and the Board noted that offering deference to such proposed mitigation would pose a significant issue if viewed in the aggregate.  That is, this deference would encourage all landowners in the Clearwater Junction area to fence out wildlife.  The cumulative effect of this fencing ultimately would diminish wildlife habitat.   The Board accordingly had no duty to defer to Richards's proposed mitigation when the Board determined that the fence would exacerbate—rather

9

than alleviate—the Board's wildlife concerns.

¶30    Richards also argues that the Board unlawfully relied on information presented in hearings regarding Richards's 2006 and 2007 applications. The Board relied, in part, on 2006 and 2007 testimony from FWP and the Missoula County Rural Initiatives. Richards cites no provision of law that prohibits the County from considering this information. We previously have allowed a governing body broad discretion with regard to a subdivision application. *See MM&I, LLC,* ¶ 35. This notion proves particularly true when applied to clearly relevant testimony.

¶31    FWP noted that its 2006 and 2007 comments "still apply" to Richards's 2010 application due to the application's failure to address adequately wildlife issues. Similarly, the Missoula County Rural Initiative noted that its testimony from 2006 and 2007 contained factual information "that is appropriate to the discussion of the wildlife resources on and in the vicinity of the property" in considering Richards's 2010 application. Richards conceded the relevancy of this testimony when he submitted his own 2006 and 2007 expert ecological reports in support of his 2010 application.

¶32    Richards has presented no facts to demonstrate the County acted in an arbitrary and capricious manner. He attempts instead to disagree with the Board's determination of facts. Richards's arguments that the Board acted unlawfully are similarly unavailing. In particular, Richards challenges the Board's consideration of FWP's report on wildlife issues. Richards has failed to establish, however, that the Board acted unlawfully in considering the FWP report. He similarly has failed to establish that the Board's consideration of the FWP report lacked foundation. And finally, Richards has failed to establish that the Board violated the

10

statutory provisions for consideration of possible deleterious effects on wildlife as set forth in the FWP report. The District Court properly granted summary judgment in the face of these undisputed facts.

¶33 *Whether the County was entitled to summary judgment on Richards's regulatory taking claim?*

¶34 Richards contends that the County's denial of his subdivision constitutes a taking that entitles him to compensation. A person may recover no compensation, however, when he seeks to use his land in a manner prohibited by pre-existing rules or regulations. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029 (1992). Indeed, a person who buys a parcel with existing regulatory restrictions has no grounds to allege economic loss when a governing body enforces those restrictions and he fails to realize his investment expectations. *Palm Beach Isles Assocs. v. U.S.*, 231 F.3d 1354, 1363 (Fed. Cir. 2000). A person has no reasonable expectation, when he purchases such property, that it may be used for a prohibited purpose. *Palm Beach*, 231 F.3d at 1363.

¶35 Richards purchased the property with the intent of creating a subdivision. Richards fully understood, however, that he lawfully could subdivide the land only with County approval. Richards cannot now allege economic loss when he should have appreciated the risk that, due to existing law, his subdivision may never have materialized. Richards stands in the same place today that he was when he purchased the property—the owner of a 200-acre parcel that remains subject to subdivision review. Richards can sustain no takings claim under these circumstances.

¶36 Affirmed.

11

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JIM RICE


Justice James C. Nelson, concurring.

¶37 I concur in the Court's decision. I write separately regarding Richards' argument that a party who challenges a governing body's decision on a subdivision application should be able to rely upon "extraneous evidence" not contained in the administrative record. Opinion, ¶ 21.

¶38 Richards cites *Aspen Trails Ranch, LLC v. Simmons*, 2010 MT 79, ¶ 53, 356 Mont. 41, 230 P.3d 808, in support of this argument. The source of this line of authority, however, is *Skyline Sportsmen's Assn. v. Bd. of Land Commrs.*, 286 Mont. 108, 951 P.2d 29 (1997), in which the Court made the following statement:

> The standard of review of an informal administrative decision is whether the decision was arbitrary, capricious, or unlawful. *North Fork Pres. v. Dept. of State Lands* (1989), 238 Mont. 451, 458-59, 778 P.2d 862, 867. It was appropriate for the District Court, in applying that standard, to accept new evidence and not to limit its review to the administrative record. In a proceeding to determine whether an agency decision was arbitrary, capricious, or unlawful, unless the reviewing court looks beyond the record to determine what matters the agency should have considered, it is impossible for the court to determine whether the agency took into consideration all relevant factors in reaching its decision. *Asarco, Inc. v. U.S.E.P.A.* (9th Cir. 1980), 616 F.2d 1153, 1160.

12

*Skyline Sportsmen's Assn.*, 286 Mont. at 113, 951 P.2d at 32.

¶39 As we have since recognized, *Asarco* does not stand for an unqualified rule permitting the consideration of extra-record evidence when reviewing administrative decisions. To the contrary,

> the *Asarco* court limited the use of extra-record evidence to three purposes: for background information; for ascertaining whether the agency considered all the relevant factors; or for ascertaining whether the agency fully explicated its course of conduct or grounds of decision. 616 F.2d at 1160. The court stated that "[c]onsideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted, even if the court has also examined the administrative record." *Id.*

*Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 66, 360 Mont. 207, 255 P.3d 80.

¶40 A more recent statement of Ninth Circuit law still provides that judicial review of agency action is "limited to the administrative record." *N.W. Envtl. Advocs. v. Natl. Marine Fisheries Serv.*, 460 F.3d 1125, 1144 (9th Cir. 2006). The Ninth Circuit has recognized "a discrete set of narrow exceptions" to this rule, where a district court may admit extra-record evidence: (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith. *N.W. Envtl. Advocs.*, 460 F.3d at 1145.

¶41 In *Aspen Trails*, this Court held that the district court did not err when it conducted an evidentiary hearing and admitted extra-record evidence. In so doing, the Court simply recited the above-quoted paragraph from *Skyline Sportsmen's Assn. See Aspen Trails*, ¶ 53.

13

The *Aspen Trails* Court provided no limiting or qualifying language in its application of the *Skyline Sportsmen's Assn.* rule. In the present case, however, the County argues a plausible interpretation of *Aspen Trails* as representing an extremely limited exception to the general rule that a court must limit its review to consideration of the record before the governing body when it issued its decision. *See* Opinion, ¶ 23.

¶42    In *MM&I, LLC v. Bd. of County Commrs.*, 2010 MT 274, 358 Mont. 420, 246 P.3d 1029, this Court held that the district court did not abuse its discretion when it *refused* the post-hearing testimony of two Gallatin County Commissioners. *MM&I*, ¶ 27. It was necessary in the course of our decision to distinguish *Aspen Trails*. In so doing, we suggested that the testimony at issue in *Aspen Trails* was properly admitted because it was "in the form of additional information from an expert witness regarding the condition of the subject property which was not contained in the EA—information which should have been included by law." *MM&I*, ¶ 26. Conversely, the testimony at issue in *MM&I* was properly excluded because it "concerned the Commissioners' thought processes regarding actions taken more than five years earlier and where at least one of the Commissioners repeatedly stated that she did not recall the specifics of the matter." *MM&I*, ¶ 26.

¶43    I acknowledge that I signed the Court's opinion in *Skyline Sportsmen's Assn.* and authored the Court's opinion in *MM&I*. After reconsideration, however, I believe that I voted wrongly, and I now conclude that the concurring and dissenting opinions in *Skyline Sportsmen's Assn.* were correct as to this issue. *See Skyline Sportsmen's Assn.*, 286 Mont. at 116-17, 951 P.2d at 34 (Buyske, D.J., sitting for Leaphart, J., specially concurring) ("I believe the path the majority chose . . . invites future litigants to view district court

14

proceedings as a means to do what should have been done at the administrative agency level—develop the record."); 286 Mont. at 119, 951 P.2d at 36 (Gray, J., dissenting) ("I cannot join the Court's sweeping effort to reconstitute the administrative record on which the Board made its decision in order to provide the plaintiffs a 'second bite at the apple' in their late effort to impact on that record and the ultimate decision in this case.").

¶44 Accordingly, for the reasons expounded in Justice Rice's *Aspen Trails* concurrence— with which I agreed, *see Aspen Trails*, ¶ 72 (Nelson, J., specially concurring)—I would reject the broadly stated rule of *Skyline Sportsmen's Assn.*, which the Court seemingly perpetuated in *Aspen Trails*. I would hold that review of the governing body's action is limited to the record before the governing body at the time of its decision—subject only to the narrow exceptions noted above. *Heffernan*, ¶ 66; § 2-4-704(1), MCA (review of an agency decision "must be confined to the record").

¶45 Furthermore, to the extent that our reasoning at ¶ 26 of *MM&I* might be read as permitting extra-record evidence to support "unlawfulness" challenges, while prohibiting extra-record evidence to support "arbitrariness or capriciousness" challenges, I would not adopt such a distinction. *See Heffernan*, ¶ 65 (explaining these standards). Whether the evidence pertains to the lawfulness of the governing body's action, or to the arbitrariness or capriciousness of the governing body's action, the evidence should be made part of the administrative record so that the governing body is given the opportunity to remedy any alleged errors in its decision-making process prior to judicial review. *Cf. State v. West*, 2008 MT 338, ¶ 17, 346 Mont. 244, 194 P.3d 683 ("Above all else, the rationale underlying the timely-objection rule is judicial economy and *bringing alleged errors to the attention of each*

15

*court involved, so that actual error can be prevented or corrected at the first opportunity.*"
(emphasis added, internal quotation marks omitted)).

¶46     With these observations, I concur in the Court's decision.


                                        /S/ JAMES C. NELSON