(246 P.3d 1013)
No. 103,028

STATE OF KANSAS, *Appellee*, v. BRUNO EDGAR, *Appellant*.

Opinion filed February 11, 2011.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*James R. Spring*, deputy county attorney, and *Steve Six*, attorney general, for appellee.

Before MALONE, P.J., BUSER, J., and BRAZIL, S.J.

MALONE, J.: Bruno Edgar appeals his felony conviction of driving under the influence of alcohol (DUI). Edgar claims the district court erred by denying his motion to suppress the evidence. Specifically, Edgar claims the investigating law enforcement officer lacked reasonable suspicion to request Edgar to take a preliminary breath test (PBT) because he already had passed two field sobriety tests. Edgar also argues that his consent to the PBT was involuntary because the officer informed him that he did not have a right to refuse the test. Finally, Edgar claims the district court erred by ordering him to reimburse the State Board of Indigents' Defense Services (BIDS) for attorney fees in an amount "to be determined."

On July 29, 2007, Udall Police Department Officer Perry Lambert was on duty at a driver's license check lane on K-15 in Cowley County. Edgar came through the check lane at approximately 12:45 a.m. When Lambert asked Edgar if he had his driver's license, he initially seemed confused and said no. Lambert then waved him over to the shoulder of the road to allow other traffic to pass. Lambert asked Edgar again whether he had a driver's license, and Edgar handed him an identification card. Lambert then asked Edgar a third time whether he had a regular driver's license, and Edgar replied yes and provided Lambert with a driver's license. Lambert took down the information on the driver's license and checked it with the dispatcher, who advised Lambert that Edgar's license was suspended.

During his conversation with Edgar, Lambert noticed a "light smell of alcoholic beverage." When Lambert asked Edgar if he had consumed any alcohol, Edgar stated he had consumed "just beer," but Edgar did not state how many beers he had consumed. Lambert then asked Edgar to step out of his truck to perform field sobriety tests. Lambert first tested Edgar with the horizontal gaze nystagmus (HGN) test. Lambert then asked Edgar to perform the walk-and-turn test. Lambert gave the instructions twice because Edgar "seemed a little confused" about the test. Edgar "did fine" on the test except he did not touch heel-to-toe as instructed one

time. Lambert then asked Edgar to perform the one-legged stand test, and Edgar passed that test.

Lambert then asked Edgar to submit to a PBT. Lambert informed Edgar "that he didn't have a right to refuse" the test. Lambert also notified Edgar that he did not have a right to consult with an attorney regarding whether to take the PBT and that he may be subject to further testing. Edgar submitted to the PBT, which registered an alcohol level of .122. Lambert then arrested Edgar for DUI. He read Edgar the implied consent advisory and asked him to submit to a blood test, to which Edgar agreed. Lambert took Edgar to William Newton Memorial Hospital where his blood was drawn. Testing by the Kansas Bureau of Investigation (KBI) revealed a blood alcohol content of .10 grams per 100 milliliters of blood.

Edgar was charged with one count of DUI, fourth or subsequent offense, a nonperson felony, and one count of driving while suspended (DWS), third or subsequent offense, a class A nonperson misdemeanor. Edgar filed a motion to suppress the evidence. He argued, among other issues, that the results of the PBT and the subsequent blood test should be suppressed because Lambert did not have reasonable suspicion to request the PBT and his consent to the PBT was involuntary. After a hearing, the district court denied Edgar's motion to suppress.

The State subsequently dismissed the DWS charge, and the case proceeded to a bench trial on stipulated facts on the DUI charge. The district court found Edgar guilty of DUI. At sentencing, Edgar was ordered to pay KBI fees, and he was ordered to reimburse BIDS for his court-appointed attorney. The district court inquired into Edgar's income, marital status, and number of dependents prior to assessing the BIDS fee. At the time of sentencing, the amount of the BIDS fee was unknown, and the journal entry of judgment listed the fee as "TBD." The district court later approved attorney fees in the amount of $1,128. Edgar timely appealed.

On appeal, Edgar claims the district court erred by denying his motion to suppress the evidence. Specifically, Edgar argues that Lambert lacked reasonable suspicion to request Edgar to submit to a PBT because he already had passed the field sobriety tests.

Edgar also argues that his consent to the PBT was involuntary because Lambert informed him that he did not have a right to refuse the test. Finally, Edgar claims the district court erred by assessing BIDS attorney fees in an amount to be determined.

## REASONABLE SUSPICION TO REQUEST PBT

Edgar first argues that Lambert lacked reasonable suspicion to request Edgar to submit to a PBT. Edgar concedes that Lambert was justified in initiating the DUI investigation based on the odor of alcohol and his admission to drinking. However, Edgar argues that Lambert's subsequent investigation dispelled his initial suspicion that Edgar was operating a vehicle while under the influence of alcohol. According to Edgar, when he passed the field sobriety tests, Lambert no longer possessed reasonable suspicion to request the PBT.

On a motion to suppress evidence, an appellate court reviews the factual findings underlying the district court's suppression decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those factual findings by a de novo standard. The appellate court does not reweigh the evidence. *State v. Ransom,* 289 Kan. 373, 380, 212 P.3d 203 (2009). When the facts material to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Fitzgerald,* 286 Kan. 1124, 1126, 192 P.3d 171 (2008).

Administration of a PBT is governed by K.S.A. 2010 Supp. 8-1012(b), which provides:

"A law enforcement officer may request a person who is operating or attempting to operate a vehicle within this state to submit to a preliminary screening test of the person's breath to determine the alcohol concentration of the person's breath if the officer has reasonable suspicion to believe the person has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs or both alcohol and drugs."

Thus, Lambert was authorized to request Edgar to submit to a PBT provided Lambert had reasonable suspicion to believe Edgar had been operating or attempting to operate his vehicle while un-

der the influence of alcohol or drugs. "Whether reasonable suspicion exists is a question of law. An appellate court uses a mixed question standard of review, determining whether substantial competent evidence supports the district court's findings, while the legal conclusion is reviewed de novo." *State v. Thomas,* 291 Kan. 676, Syl. ¶ 12, 246 P.3d 678 (2011).

The State points out that nothing prevented Lambert from beginning his investigation with the PBT prior to the field sobriety tests. When Lambert requested Edgar's driver's license, he smelled the odor of alcohol and Edgar admitted he had consumed beer. The State argues that this evidence alone supplied reasonable suspicion for Lambert to request the PBT. See *State v. Pollman,* 286 Kan. 881, 883-84, 190 P.3d 234 (2008) (odor of alcohol and defendant's admission to drinking supported request for PBT). However, the State's reliance on *Pollman* ignores Edgar's argument that Lambert's initial suspicion dissipated when Edgar passed the field sobriety tests.

Edgar's argument presents a question of first impression in Kansas. However, the question has been squarely addressed by the Vermont Supreme Court in *State v. Mara,* 186 Vt. 389, 987 A.2d 939 (2009). In *Mara,* a state trooper stopped the defendant for driving with a cracked tail light. Upon approaching the vehicle, the trooper smelled an odor of alcohol and observed the defendant's eyes were watery and bloodshot. The defendant admitted that he had consumed beer earlier in the evening. The trooper administered standard field sobriety tests, and the defendant passed the walk-and-turn test and the one-legged stand test. Although the defendant failed the HGN test, the district court did not consider the result of this test in determining reasonable suspicion. The trooper asked the defendant to submit to a PBT which registered his blood alcohol content as .102. The trooper then arrested the defendant for DUI.

In district court, the defendant filed a motion to suppress the evidence and argued that the trooper lacked reasonable suspicion to administer the PBT. The district court concluded that the defendant's admission to drinking beer earlier in the evening, the odor of alcohol emanating from the defendant, and the defendant's

watery, bloodshot eyes, taken together, were sufficient indicia of possible alcohol intoxication for the trooper to investigate further. The district court went on to rule, however, that the trooper's suspicion of DUI had dissipated, as a matter of law, before the trooper administered the PBT because the defendant had passed the field sobriety tests. Thus, the district court granted the defendant's motion to suppress and dismissed the case.

On appeal, the Vermont Supreme Court reversed. The Supreme Court noted that the trooper would have been justified to administer the PBT immediately after ordering the defendant out of his vehicle based on the odor of alcohol, the defendant's bloodshot eyes, and his admission to drinking. The Supreme Court further stated:

"We cannot affirm the district court's conclusion that the trooper's suspicion of DUI became unreasonable for the sole reason that defendant passed two field sobriety tests. Rather, the trooper was still faced with the situation in which a driver smelled of alcohol, had watery and bloodshot eyes, and admitted to drinking alcohol. The trooper testified that his training and experience suggested that the first two facts indicated possible impairment, and the third required no such training or experience to militate in favor of further investigation." 186 Vt. at 394.

The Vermont Supreme Court concluded that although the defendant's performance on the walk-and-turn and one-legged stand tests might not, by itself, have supported a reasonable suspicion of DUI, it also did not as a matter of law compel the trooper to cease his roadside investigation. The Supreme Court noted that although the defendant did not fail the field sobriety tests, his performance was not flawless, and the trooper need not evaluate the test results in a binary fashion. 186 Vt. at 395.

We find the reasoning of the Vermont Supreme Court to be persuasive. In conducting a DUI investigation, a law enforcement officer is not required to reweigh reasonable suspicion after each field sobriety test. If reasonable suspicion exists at the outset of the investigation, an officer should be allowed to run the usual array of tests, within a reasonable number, to determine if the officer's reasonable suspicion leads to arrest or release of the person detained. As the Kansas Supreme Court has stated in evaluating reasonable suspicion:

" ' "Our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious," . . . but to determine whether the totality of the circumstances justify the detention. . . . We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, . . . remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 [1989]).' "

In Kansas, whether a law enforcement officer has reasonable suspicion to request a driver to submit to a PBT is determined by examining the totality of the circumstances. The driver's performance on field sobriety tests may be considered along with all the other evidence available to the officer. However, the fact that a driver passes one or more field sobriety tests does not dispel reasonable suspicion, as a matter of law, if other evidence justifies the officer's request for the PBT.

Here, at the time Lambert administered the PBT he had smelled alcohol and Edgar had admitted to drinking beer. Also, Edgar initially seemed confused when Lambert requested his driver's license and Edgar first provided an identification card instead of his license. In addition, Lambert had to instruct Edgar twice on the walk-and-turn test and Edgar missed one heel-to-toe step on the test. Edgar's performance on the field sobriety tests did not substantially dissipate Lambert's initial suspicion. We conclude under the totality of the circumstances that Lambert had reasonable suspicion to believe Edgar had been operating or attempting to operate a vehicle while under the influence of alcohol sufficient to justify Lambert's request for the PBT.

## CONSENT TO PBT

Next, Edgar claims the district court erred by denying his motion to suppress the evidence because his consent to take the PBT was involuntary. Specifically, Edgar argues that his consent was involuntary because Lambert informed him that he did not have the right to refuse the test. Edgar also argues that Lambert failed to provide him with the appropriate statutory notices at the time the test was requested. As previously stated, when the material facts

to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *Fitzgerald*, 286 Kan. at 1126.

To restate the pertinent facts, before the PBT was administered, Lambert notified Edgar that he did not have a right to consult with an attorney regarding whether to submit to testing. Lambert also informed Edgar that further testing may be required after the PBT. Finally, Lambert told Edgar "that he didn't have a right to refuse" the PBT.

A PBT requires a sample of deep lung air and constitutes a search. *State v. Jones*, 279 Kan. 71, 74-75, 106 P.3d 1 (2005). Searches conducted without a warrant are per se unreasonable, but one of the exceptions to the warrant requirement is consent. In *Jones*, the Kansas Supreme Court held that the implied consent provisions of K.S.A. 8-1001 did not apply to a PBT administered pursuant to K.S.A. 8-1012. Because the defendant in that case did not impliedly consent to the PBT, the State was required to show that he "unequivocally, specifically, freely, and intelligently consented" to the PBT. 279 Kan. at 78. Finding that the State did not meet that burden, the court found that the results of the PBT were not admissible. 279 Kan. at 82.

Edgar's argument is similar to the defendant's argument in *Jones*, and he contends the State failed to show that his consent to the PBT was knowing, intelligent, and voluntary. But Edgar's argument ignores the fact that in 2006, the Kansas Legislature effectively overruled *Jones* by amending K.S.A. 8-1012 to include an implied consent provision. The statute now provides that "[a]ny person who operates or attempts to operate a vehicle within this state is deemed to have given consent to submit to a preliminary screening test of the person's breath subject to the provisions set out in subsection (b) [requiring reasonable suspicion]." K.S.A. 2010 Supp. 8-1012(a). Thus, at the time of Edgar's DUI arrest, his consent to the PBT was not required to be knowing, intelligent, and voluntary; rather, his consent was statutorily implied.

Edgar also argues that Lambert failed to provide him with the appropriate statutory notices at the time the test was requested. K.S.A. 2010 Supp. 8-1012(c) provides:

"At the time the test is requested, the person shall be given oral notice that: (1) There is no right to consult with an attorney regarding whether to submit to testing; (2) refusal to submit to testing is a traffic infraction; and (3) further testing may be required after the preliminary screening test. Failure to provide the notice shall not be an issue or defense in any action. The law enforcement officer then shall request the person to submit to the test."

The notice provisions of K.S.A. 2010 Supp. 8-1012(c) are different from the notice provisions of K.S.A. 2010 Supp. 8-1001(k) which are required before a blood, breath, or urine test can be administered to determine a driver's blood alcohol content. The notice provisions under K.S.A. 2010 Supp. 8-1001(k) are mandatory, and failure to provide the warnings may result in suppression of the results of the test administered under that statute. See *State v. Luft,* 248 Kan. 911, 912-13, 811 P.2d 873 (1991). But in *State v. Gray,* 270 Kan. 793, 798, 18 P.3d 962 (2001), the Kansas Supreme Court noted "[i]t must be recognized that the tests which may be requested under K.S.A. 1999 Supp. 8-1012 and K.S.A. 1999 Supp. 8-1001 are completely separate in purpose, usage, and legal effect." In *Jones,* in discussing the notice provisions, the court noted "the legislature meant for the two tests to be markedly different." 279 Kan. at 80-81.

The test results under K.S.A. 2010 Supp. 8-1001 are admissible in court as direct evidence of the defendant's blood alcohol content in a driver's license suspension proceeding as well as a criminal prosecution for DUI. The test results under K.S.A. 2010 Supp. 8-1012 are preliminary in nature and are used only to assist a law enforcement officer to determine probable cause for arrest. Such results are inadmissible in any civil or criminal action concerning the operation or attempted operation of a vehicle except to aid the court in determining a challenge to the validity of the arrest. K.S.A. 2010 Supp. 8-1012(d).

K.S.A. 2010 Supp. 8-1001(a) provides that any person who operates or attempts to operate a vehicle in Kansas is deemed to have given consent, *subject to the provisions of the act,* to submit to one or more tests of the person's blood, breath, urine, or other bodily substance to determine the presence of alcohol or drugs. One of the provisions of the act is that before a test or tests are adminis-

tered under this section, the person shall be given oral and written notice of the advisories set forth at K.S.A. 2010 Supp. 8-1001(k). Thus, a person's implied consent to submit to one or more of the tests under K.S.A. 2010 Supp. 8-1001 is subject to that person receiving oral and written notice of the advisories an officer must provide before the test or tests are administered.

K.S.A. 2010 Supp. 8-1012(a) provides that any person who operates or attempts to operate a vehicle in Kansas is deemed to have given consent to submit to a preliminary screening test of the person's breath *subject to the provisions set out in subsection (b).* Subsection (b) provides that a law enforcement officer may request a person to submit to a PBT if the officer has reasonable suspicion to believe the person has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs. The oral notice that an officer must provide a person at the time a PBT is requested is set forth in subsection (c) of the statute, not subsection (b). Thus, the only requirement to trigger the implied consent provisions for a PBT is for the officer to have reasonable suspicion to believe a person has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs. A person's implied consent to submit to a PBT under K.S.A. 2010 Supp. 8-1012 is not subject to that person receiving the oral notice an officer must provide at the time the test is requested.

K.S.A. 2010 Supp. 8-1012(c) uses the word "shall" when listing the notice to be provided at the time the PBT is requested. However, the statute also uses the word "shall" when stating that failure to provide the notice is not a defense or issue in any action. In examining the legislative intent underlying the notice provisions of K.S.A. 2010 Supp. 8-1012, a panel of this court has previously stated:

"Frankly, we do not know what the legislature may have *meant* to say in passing K.S.A. 8-1012. But what the legislature *did* say is clear and unambiguous: failure to provide the oral advisories *shall not* be an issue or defense in *any* action. We do not rewrite statutes. Our job is to hold they mean what they clearly state. Under the clear wording of the statute, failure . . . to give the oral advisories simply cannot be an issue or defense in this action. Modification or correction of the language of the statute, if appropriate, must come from the legislature and

not the courts. [Citation omitted.]" *Kansas Department of Revenue v. Hurst,* No. 92,973, unpublished opinion filed August 12, 2005, slip op. at 4.

Here, Lambert notified Edgar that he did not have a right to consult with an attorney regarding whether to submit to testing. Lambert also informed Edgar that further testing may be required after the PBT. However, Lambert failed to notify Edgar that refusal to submit to testing is a traffic infraction. Nevertheless, K.S.A. 2010 Supp. 8-1012(c) clearly and unambiguously provides that a law enforcement officer's failure to provide the proper notice shall not be an issue or defense in any action. Thus, the fact that Lambert failed to notify Edgar that his refusal to submit to the PBT was a traffic infraction does not negate Edgar's implied consent to the test, and this fact does not provide Edgar with a basis to suppress the evidence.

## BIDS ATTORNEY FEES

Finally, Edgar argues that the district court erred by assessing BIDS attorney fees in an amount "to be determined." Edgar argues that this procedure violates the provisions of K.S.A. 22-4513. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Arnett,* 290 Kan. 41, 47, 223 P.3d 780 (2010).

In *State v. Robinson,* 281 Kan. 538, 546, 132 P.3d 934 (2006), the Kansas Supreme Court held that before assessing BIDS attorney fees under K.S.A. 22-4513, a sentencing court shall consider the financial resources of the defendant and the nature of the burden that payment will impose. The Kansas Supreme Court has also determined that a sentencing court cannot adequately evaluate the amount of attorney fees the defendant is able to pay without knowing the specific amount of attorney fees being requested. *State v. Stevens,* 285 Kan. 307, 330, 172 P.3d 570 (2007). "Nevertheless, because the assessment of BIDS attorney fees is not punitive and not a part of the sentence, the failure to announce the amount of the fee at the sentencing does not mean the fees can never be assessed against a defendant. [Citation omitted.]" *State v. Phillips,* 289 Kan. 28, 43, 210 P.3d 93 (2009). In such a situation, "a remand

is appropriate for reconsideration of the payment of BIDS attorney fees." 289 Kan. at 43.

Here, the district court inquired into Edgar's income, marital status, and number of dependents prior to assessing the BIDS attorney fees. However, the district court did not assess a specific amount of attorney fees at sentencing because the amount was unknown at that time. The journal entry of judgment stated the amount of the BIDS fee was "TBD." Based on *Stevens*, the district court failed to comply with K.S.A. 22-4513 when it assessed BIDS attorney fees in an amount to be determined. The appropriate remedy is to remand for reconsideration of the payment of BIDS attorney fees based upon a request for a specific amount of fees.

Affirmed in part, reversed in part, and remanded for reconsideration of BIDS attorney fees.